HON. ROGER S. GREENE........................... do.      do.

JOSEPH H. HOUGHTON............................ CLERK.

### BENJAMIN C. STEVENS *vs.* D. S. BAKER, *et al.*

The rule is general, that one partner cannot sue his co-partner in a court of law for a recovery upon an unsettled co-partnership indebtedness.

A somewhat different rule obtained in Massachusetts, when courts of that state had no equity powers in matters of co-partnership.

An act of the Legislative Assembly, destroying the distinctions between law and equity and prescribing a single form of action to establish and enforce private rights, is in violation of the Organic Act.

The Organic Act plainly contemplates courts of law, of chancery and of admiralty, with the modes of procedure that are peculiar to each respectively.

By virtue of the ninth section of the Organic Act, the Supreme and District Court of this Territory, in cases arising under the laws of the Territory, and constitution and laws of the United States, possess all the jurisdiction of Circuit and District Courts of the United States, and in the absence of any local system of practice, have no other system of procedure than such Courts; and hence, in the absence of a local equity system, the rules in equity adopted by the Supreme Court of the United States, are binding on the Territorial Courts when acting as Courts in chancery.

*B. F. Dennison* for plaintiff in error.

Opinion by JACOBS, Chief Justice.

The facts involved in this case, the statement of which may be necessary to the understanding of the points upon which we base our decision, are briefly these:

Sometime in June, A. D. 1869, D. S. Baker, *et al.*, defendants in error, but plaintiffs in the District Court, entered into

315.

a contract of co-partnership with B. C. Stevens, plaintiff in error. The subject matter of the co-partnership was a band of cattle, known as the Nodi cattle. Defendants in error agreed to furnish, and did furnish, all the capital of said co-partnership. Plaintiff in error agreed to furnish, and did furnish, his personal services and skill in the purchase, herding, driving and sale of said cattle. Plaintiff in error agreed that defendants in error should, from the proceeds of the sale of said cattle, first have their money or capital paid back to them, together with one and one half per cent. interest per month thereon from the time of furnishing the same, provided proceeds of enterprise amounted to that much; if more, surplus to be equally divided between plaintiff in error and defendants in error; if there should be a loss, it was to be borne in the same manner as profits were to be shared.

The cattle were purchased and driven from Walla Walla county to the State of Nevada, and there sold by plaintiff in error. Most of the purchase money was returned to defendants in error. Plaintiff in error claimed that there was a loss in the enterprise, and that no more money was due defendants in error; while defendants in error claimed that on a fair and honest settlement of the co-partnership accounts there would be between three and four thousand dollars due them.

An action of assumpsit was commenced in the District Court of the First Judicial District, holding terms at the city of Walla Walla, to recover said alleged balance. There was a jury trial, a verdict for the plaintiffs, and a judgment of the Court as a conclusion of law upon that verdict.

The original complaint among other things, alleged a settlement of the partnership indebtedness, an accounting together, an ascertainment of a balance due the plaintiffs and a promise to pay that balance. All of these allegations were specifically denied by defendant's answer. For some reason not disclosed by the record, plaintiffs obtained leave to file, and did file, an amended complaint. In this amended complaint all of the allegations mentioned above were omitted. The answer to the amended complaint set up the partnership outstanding indebt-

edness, and that there had been no accounting together, and no balance found due to either party.

The principal question raised here, on the above statement of facts, is:  Did the amended complaint state facts constituting a cause of action at law?  Or, in other words, had a court of law jurisdiction over the facts stated in the amended complaint?  We think not.  The rule is almost universal that one partner cannot sue his co-partner at law, without alleging and proving a settlement of the partnership indebtedness, the accounting together of the partners and the ascertainment of a balance and a promise, either express or implied, to pay that balance. *Russel vs. Ford*, 2 Cal., 86-7; *Nugent vs. Locke*, 4 Cal., 320; *Casey vs. Brush*, 2 Caines, 193; 12 Johnson, 401; 14 *Idem*, 318; 17 *Idem*, 84; 1 Wendell, 534; Metcalf on Contracts, 130-1; Story on Part., 221; 1 Wash. C. C. R., 435; 2 Cranch. C. C. R., 401; 5 *Idem*, C. C. R., 154.

There is a conflict of authorities, as to whether the law will imply a promise to pay simply from the statement of an account between partners and the ascertainment of a balance due one or more of them.  In this case there was no accounting together and hence no balance found, but we state the proposition broadly above, because warranted by the record, not meaning however to decide whether the law would imply a promise or not.  See Met. on Contracts, 132.

The rule in Massachusetts is different from the general rule stated above.  The Courts in that State, formerly at least, had no equity powers in matters of copartnership, and the action of assumpsit was maintainable without the allegation that the partners had accounted together, and that a balance was found due one or more of them.  3 Pick., 420; 4 Met., 556; 14 Pick., 315; 14 Allen, 60.

In that State the rule adopted by the Courts was a matter of necessity to prevent injustice.  The Court had power to appoint auditors to take the account between the partners, to whose reports exceptions could be taken the same as to the report of a master.  The proceeding was substantially a proceeding in equity.  But it is argued that the Legislature of this

Territory has abolished all distinctions between law and equity, and adopted but one form of action to be established and enforce private rights, which is called a civil action. Stat. of 1863 and 1869, 63, page 88, Sec. 2. If the Legislature had the power to do what it has attempted to do, the proceedings in the District Court, so far as the form of the action and the mode of the trial are concerned, were regular enough, and valid. But we are all clearly of the opinion that the Territorial Legislature possessed no rightful power to destroy the distinctions between law and equity. The organic act is to all intents and purposes the constitution of this Territory. The Legislature cannot violate its provisions nor abridge its grants of power to the Courts established by it.

The sixth section of the organic act provides, "That the legislative power of the Territory shall extend to all rightful subjects of legislation, not inconsistent with the laws and constitution of the United States." And again, "Any law or laws inconsistent with the provisions of this act shall be utterly null and void." Again, Sec. 9 provides, after enumerating the Courts in which the judicial power of the Territory is vested, "that the Supreme and District Courts, respectively, shall possess *chancery* as well as common law jurisdiction." "Writs of error, bills of exceptions and *appeals*," are allowed from the District to the Supreme Court of the Territory. Further it is provided: The District Courts shall have and exercise the same jurisdiction in all cases under the constitution and laws of the United States, as is vested in the Circuit and District Courts of the United States. Sec. 9, Organic Act.

Now here is an express grant of chancery jurisdiction to the Supreme and District Courts of the Territory. The language of the grant implies something in addition *to*, and different *from*, common law jurisdiction. "Shall have chancery *as well as* common law jurisdiction." The grant is general and unrestricted and must be construed to mean not only jurisdiction over the subject matters cognizable in the Courts of equity, but the mode of procedure known to such courts as contradistinguished from Courts of law. Courts of common law have

their mode of procedure.  Courts of equity theirs, and Courts of admiralty theirs.  These modes of procedure are peculiar to each, and are respectively embraced in the terms, Common law jurisdiction, Chancery jurisdiction, and Admiralty jurisdiction.

In the 2d Section of the 3d Article of the National Constitution the language is:  "The judicial power shall extend to all cases in *law* or *equity*," etc.  By the term "law," as thus used, is meant not merely suits which the common law recognized among its old and settled proceedings, but suits in which legal rights were to be ascertained and determined in contradistinction to those where equitable rights alone were cognizable and equitable remedies administered.  The term "law", as here used, means the same system as is designated by the words "Common law" in the Seventh Amendment to the Constitution. 3 Pet., 433; 16 Pet., 451; 1 Vol. Abbott's Digest Practice U. S. Courts, page 195.

The terms "law and equity" *in proprio vigore*, carry with them the modes of procedure peculiar to each.  Not only are the terms "chancery as well as common law jurisdiction" used in the Organic Act, but "writs of error and appeals" are named also.  A "writ of error" is a proceeding known alone to the Courts of common law, while an appeal is known alone to Courts of chancery and admiralty.  That the terms "law and equity," quoted above from the constitution, embrace all that we claim for them is manifest from the laws of Congress, the decisions, rules and uniform practice of the Courts of the United States.

1.  The laws of Congress.  The temporary act of 29th of Sept., 1789, provides, "That the forms and modes of procedure in causes of equity and of admiralty and maritime jurisdiction shall be according to the course of the civil law."  1 Stat. at Large, 93.  The 34th section of the judiciary act makes the laws of the several States, except where the constitution, treaties or statutes of the United States shall otherwise require or provide, rules of decision in trials at *common law*, in the Courts of the United States, in cases where they apply.  1 Stat. at Large, 92.

The "Process Act" of May 8th, 1792, provides "that suits in equity and those of admiralty and maritime jurisdiction shall be according to the principles, rules and usages of courts of equity and to courts of admiralty, respectively as *contradistinguished* from the courts of common law." 1 Stat. at Large, 276. The act of May 19, 1828, and the act of Aug. 1, 1842, contain the same provisions. 4 Stat. at Large, 278; 5 Stat. at Large, 278.

2. The decisions of the Supreme Court of the United States upon this question are briefly but well stated by Mr. Greenleaf in his work on Evidence. 3 Green., page 252, note 1. After reciting the provisions of the law of Congress, making the laws of the several States rules for decision in the courts of the United States in trials at common law, he says: "But it has been decided that the adoption of the State practice must not be understood as confounding the principles of law and equity; that the distinction between law and equity is established by the National Constitution; and that, therefore, though a party, seeking to enforce a title or claim at law in the courts of the United States, may proceed according to the form of practice adopted in the State where the remedy is pursued; yet, if the claim is an equitable one, he must proceed according to the rules which the Supreme Court of the United States has prescribed for the regulation of proceedings in equity; notwithstanding the State laws have abolished the distinction of forms of proceeding at law and in equity and have established one uniform and peculiar mode of remedy for all cases. *Bennet vs. Butterworth*, 11 How. S. C. R., 669; *Livingston vs. Story*, 9 Peters S. C. R., 632; *Ganns vs. Relf*, 15 Peters S. C. R., 9.

That the Supreme and District Courts of this Territory, in cases arising under the laws of the Territory and the constitution and laws of the United States, possess all the jurisdiction of the regular Circuit and District Courts of the United States, is manifest from the passage quoted heretofore from the 9th section of the Organic Act of this Territory. The regular Circuit and District Courts of the United States were created by act of Congress, by virtue, it is true, of a constitutional grant

of power so to do. The Courts of this Territory were also created by act of Congress, either by virtue of the constitutional grant of power to Congress "to make all needful rules and regulations respecting the Territory, etc., of the United States," or as an inevitable consequence of the power to acquire Territory. Although Territorial, they are nevertheless courts of the United States. In Waterman's Chancery Digest, vol. 1, page 59, is found the following: "The judicial power of the United States is vested in one Supreme Court, in Circuit Courts, District Courts and *Territorial* Courts." The Judges are officers of the United States, appointed by the President, by and with the advice and consent of the Senate of the United States. They are attended by a Marshal and U. S. District Attorney, officers of the United States. The disposition of their records will be within the power and control of Congress when the Territory becomes a State and is admitted into the Union as such. *Hunt vs. Palo*, 16 Curtis, 209. See act concerning Oregon, 11 Statutes at Large, 437.

That the rules adopted by the Supreme Court of the United States in Admiralty causes are binding on the courts of this Territory, as Courts of the United States, is too plain for argument. These Courts obtain their jurisdiction in Admiralty by virtue of the fact of their being District Courts and Courts of the United States. See Judiciary Act, 1 Stat. at Large, 76, Sec. 9.

Now, if the rules adopted by the Supreme Court of the United States are obligatory upon them in Admiralty causes, why are not the rules in Equity proceedings binding when they are acting as Courts of Chancery? We cannot resist the conclusion that the latter is not just as obligatory as the former, especially when there is no local Equity system in the Territory. What power the Territorial Legislature may possess, if any, to adopt a modified system of Equity procedure, and how far any such system would be binding on the Courts, is a question not raised in this case and not decided by us. We find ourselves without any such local system, and in such a case we are fully convinced that the chancery powers of the Supreme and Dis-

41

trict Courts of this Territory must be exercised in the manner
and form prescribed by the rules of the Supreme Court of the
United States.

The late case of *Dunphy vs. Kleinsmith*, though brief,
correctly understood, sustains fully the foregoing views. 11
Wallace, 614. In the Territory of Montana, from which this
case was taken to the Supreme Court of the United States, there
had also been a legislative abolition of the distinction between
law and equity. The Court says, after reciting the provisions
of their Organic Act, which is the same as ours: "It is appar-
ent that the Territorial Legislature has no power to pass any
law in contravention of the constitution of the United States,
or which shall deprive the Supreme and District Courts of the
Territory of *chancery as well as common law jurisdiction.*"
The act in question violated the national constitution, because
that established the distinctions between law and equity, and it
violated the Organic Act, because that gave chancery as well as
common law jurisdiction to the Courts of the Territory. Again,
the case of *Dunphy vs. Kleinsmith* was a proceeding in equity,
notwithstanding the inhibition of the Territorial statute, and
yet, because the proceedings were not strictly according to the
forms and usages in equity, they were held erroneous. It was
the case of a creditor's bill to reach property alleged to have
been fraudulently transferred to defeat the claims of the com-
plaining creditors. But the trial was by jury, and a judgment
was rendered upon the verdict as a conclusion of law. The
Court says that such trial and judgment in a chancery proceed-
ing were clearly an error. The subject matter of the suit being
of equity cognizance, it required for its rightful determination
the application of the principles, usages, rules and forms of
equity procedure, and because they were not applied the pro-
ceedings were held erroneous. The judgment also was for so
much money when it ought to have been a decree to account.
Here was another violation of the principles, rules, usages and
forms of equity, as recognized by the national constitution and
established by the laws of Congress and the rules and decisions
of the Supreme Court of the United States. The whole case

proceeds upon the ground that the causes of equity cognizance in the Territorial Courts must be heard and determined according to the principles and usages of equity as contradistinguished from proceedings at law. The principles announced are strictly applicable to the case at bar, and fully sustain the views stated above.