Ellen Tierney et al. *v.* George M. Klein et al.

1. Partnership. *Assets. Insurance agency. Good-will of business.*
   Though the business or good-will of a firm of insurance agents is valuable, if the agencies are terminable at the pleasure of the companies, and one member of the firm fails and makes a general assignment, dissolving the partnership, and the other member, under a new appointment, continues the business in his own name, creditors of the former cannot subject to their demands any interest in the business thus continued as being a part of his assets.

2. Chancery Pleading. *Relief as to matters not averred.*
   Relief will not be granted in respect to any matter unless a foundation therefor is laid in the pleadings.

3. Chancery Practice. *Supplemental bill. New party. Time for taking testimony.*
   Where a necessary party is brought in by supplemental bill, and answers denying its material averments, he is entitled to five months after answer filed for taking testimony, and the cause cannot be tried as against him upon evidence taken before he became a party.

4. Same. *Reference to master. Supreme court. Immaterial error.*
   Where the bill seeks to subject to the payment of his individual debts, the interest of a partner in the profits and good-will of a partnership, and prays for discovery and an account as to the profits and the court upon final hearing dismisses the bill, this court will not reverse merely because of a failure to grant an interlocutory order of reference to a master.

From the chancery court of Warren county.

Hon. W. R. Trigg, Chancellor.

Prior to November 21, 1883, George M. Klein and Julius M. Klein were partners in the insurance business in Vicksburg, under the name of Julius M. Klein & Co., and as such held the agencies for several insurance companies which had a well-established business in that city. These agencies were held under the appointment of the companies, and were terminable or transferable at the will of the companies. George M. Klein was at the time a partner with John A. Klein in the banking business in that city, and owned and conducted said business under the name of The Mis-

sissippi Valley Bank. On November 21, 1883, the said John A. and George M. Klein, having become insolvent, executed a general assignment of all their assets for the benefit of creditors.

Immediately after the failure and the assignment, Julius M. Klein applied by letter to the various insurance companies represented in the said agencies, and obtained for himself the appointment to the agencies, and continued the business under his own name until January 1, 1886, when he associated with himself his brother, William M. Klein, and the business has since then been carried on in the name of Julius M. Klein & Bro.

The assignment executed by John A. and George M. Klein was vacated and annulled at the suit of creditors, the court holding that it was fraudulent and void. Thereafter these appellants filed their bill in this case to reach and subject the interest of George M. Klein in the said agencies. The theory of the complainants is that the good-will of an established insurance agency is a part of its assets, and that George M. Klein had an interest in such good-will that was not lost by his assignment, and the mere change of the name of the firm ; that such good-will has a well recognized value that can be determined by proof and by reference to the customs of insurance companies in dealing with their agencies.

The bill prayed for discovery from the said Julius Klein as to the price paid for the agencies, the receipts of the business, and the profits realized since the assignment of George M. Klein ; and the court was asked to require the defendants to produce the books, papers, and documents pertaining to the firm of Julius M. Klein & Co., and Julius M. Klein & Bro. It was thereupon agreed in writing by solicitors for the defendants that Julius M. Klein should file a sworn statement or account of the income or profits in lieu of the original books and papers, but he failed to comply with the agreement.

The proof developed that the agencies were held at the pleasure of the companies, and prior to 1883 were held by Jno. A. Klein and one Fairchild, and that Julius Klein & Co. purchased the business from them agreeing to pay therefor $5575, of which $2000 was to be paid to Fairchild and $3575 to Jno. A. Klein. Notes

were given for these sums and were paid by Julius Klein after the failure of George M. Klein, and were paid out of the profits of the business. The note for $3575 was paid to Mrs. E. B. Klein. This note was produced as an exhibit to the deposition of Julius M. Klein and showed an endorsement by Jno. A. Klein "per George M. Klein atty. in fact." This endorsement was not dated. The receipt for the amount due was also written on the note and signed " E. B. Klein by Geo. M. Klein atty. in fact."

After the filing of the depositions complainants filed a supplemental bill, making Mrs. E. B. Klein, the administratrix of Jno. A. Klein, deceased, a party defendant and made as against her the same allegations and charges contained in the original bill. She answered denying the averments of the bill, and without the taking of further testimony the cause was set down for final hearing. The decree dismissed the bill and complainants appeal.

*Wade R. Young,* for appellants.

We submit the following propositions as the law applicable in this case :—

1. That the good-will of an established insurance business, which has been repeatedly bought and sold, and which has a value fixed and recognized by the custom of the trade, is as much an asset of a partnership as any tangible property, real or personal, or right or credit. *Sheppard* v. *Boggs*, 9 Neb. 257.

2. Where a firm is dissolved by the insolvency of one partner, who conveys his interest to an assignee for the benefit of creditors, the surviving partner and the representative of the insolvent become tenants in common, and until the partnership has been liquidated and settled a court of equity will, for certain purposes, regard the copartnership as still in existence ; and will require the survivor to account for whatever profits he may have made by the use of the property, or the employment of the joint capital, after deducting all necessary expenses. *Mayson* v. *Beazley*, 27 Miss. 106.

3. A decree of a court of equity setting aside an assignment as void, and findings of law and fact therein, are conclusive as to the subject matter on those who were. parties or might have

been parties to the suit, and were heard or might have been heard therein.

Such a decree, setting aside an assignment of all the property in general, on the ground that the power of the agent and attorney in fact who executed the general assignment was revoked by the insanity of the maker, is conclusive in an issue between the same parties of the want of power in the same attorney to execute a special assignment at or about the same time, or within the time for which the insanity was found to have existed. *Hanna* v. *Reed,* 102 Illinois, 596.

If a firm is dissolved, and there is no agreement to the contrary, the good-will must be sold for the benefit of all the partners, if any of them insist on such sale.

So far as is possible, having regard to the right of every partner to carry on business for himself, the court will, on a dissolution, interfere to protect and preserve the good-will until it can be sold.

If a partner has himself obtained the benefit of the good-will, he can be compelled to account for its value, that is, for what it would have sold, he being himself at liberty to compete with the purchaser. Lindley on Partnership, Vol. 2, 859.

*S. M. Shelton,* for appellees.

The agencies were the properties of the companies, to be changed at pleasure. The only thing that belongs to the agent is the business on the books of the company. There is a complete failure of proof to sustain the theory of the amended bill that the agency is an asset of the agent, and it is nowhere alleged, nor attempted to be proven, that the firm of Klein & Co. had business on the books of the companies which Julius appropriated to his own use. On the contrary, the testimony of Julius would appear to negative that idea.

Having failed to establish this theory that the agencies were assets, as said before, counsel resorts to the good-will theory. We might object to any such claim, because it nowhere appears in the pleadings and proofs.

The cases relied on by appellant were only cases in which the agent

was paid so much money to retire, and then the party paying the money solicited the companies to appoint him their agent. It was no purchase of the agency, but simply paying money to induce the party holding it to give it up in order that the other party might get it. When the firm and its business ceased to exist, the business that it had done became like animals *ferae naturae,* common property to be obtained by any one who could get the agencies. Julius had as much right to get these agencies as any one else. A stranger could have applied for and obtained them and have done business with the same class of insurers; but no one could say that he must therefore account for the good-will of the defunct firm. When he saw that George was in a position that the companies would not retain him as an agent, and that the old firm would cease to exist, he then notified the companies and asked for the agencies himself, and the companies recalled them from the firm and made him their sole agent. He did not carry on the business of the firm. It is not even shown that he continued in the same office, nor in the same portion of the town, nor had the same patrons (though I suppose he did), but he did not carry on the business of the firm, because that business had died with the firm.

Had the firm voluntarily surrendered its agencies it might have charged for its good-will. Or, had Julius gone on with the business under the firm-name, he might be responsible for its good-will. But when both the firm and the business died at the same time, so that it had no business to carry on, then neither Julius nor a stranger who might obtain the agencies and carry on business in the same office could be charged for good-will. All the cases in which continuing partners have been charged for the good-will of the old firm are cases in which the business of the firm is carried on by the continuing partner.

Counsel urge that the debt paid Mrs. E. B. Klein was wrongfully paid. We might concede that, for there is no relief asked on that point in either of complainants' bills. It was not a question in issue in the case. It developed incidentally in the proof. Had complainants wished to ask relief on that ground, they should have asked leave to amend, but they did not do this.

WOODS, C. J., delivered the opinion of the court.

The complainants, as creditors of George M. Klein, exhibited their original and amended bills against George Klein, Julius Klein, and William Klein, to reach and subject to the payment of their demands as against George Klein his alleged interests in the insurance agencies of Julius Klein & Co., and of Julius Klein & Bro., the averments being that these insurance agencies were either conducted in the interest of George Klein solely, or that George Klein was interested as a partner in them.

It is strenuously insisted by counsel for appellants that, as it is shown George Klein had an equal interest with Julius Klein in the insurance agency of Julius Klein & Co. until November, 1883, this agency and its good-will constitute an equitable asset which is to be accounted for by Julius Klein to the creditors of George Klein.

In the light of the undisputed facts that the agency of an insurance company is transferable at the pleasure of the company; that George Klein by his own act put an end to the existence of the firm of Julius Klein & Co. in November, 1883; and that the various insurance companies, whose agencies Julius Klein & Co. had held up to that time, put an end to the existence of the agencies themselves by transferring the right to represent them thereafter to Julius Klein alone on the day after George Klein's assignment, we think this contention without merit. The firm had ceased to exist by George Klein's own act, and the agencies of Julius Klein & Co. had likewise ceased to exist by the action of the companies in transferring them from that firm to Julius Klein alone, and, in this situation, the old agencies and their good-will were most intangible assets. Unquestionably, any profits, or any unfinished business, involving commissions on premiums, remaining in the firm in November, 1883, and unaccounted for by Julius Klein, were assets held for the benefit of George Klein's creditors. But the evidence affords no support to this proposition.

It is also earnestly contended that the payment of the note of Julius Klein & Co. for $3575 in favor of John A. Klein, to E. B. Klein, was in fraud of the rights of complainants, and that they are entitled to a recovery to that amount at any rate.

This contention is based upon the alleged insanity of John A. Klein at the date of, and prior to, the assignment of George Klein, whereby the power of attorney from John A. Klein to George Klein, theretofore made, had been revoked and annulled, and the endorsement and transfer of said note by George Klein, as such attorney-in-fact, to E. B. Klein, was unauthorized and void, and its subsequent payment by Julius Klein was fraudulent. This contention is not maintainable, in our opinion, for the reason that in none of the bills of complainants is such an issue presented.

Moreover, the supplemental bill filed by complainants, by which the administratrix of John A. Klein was made a party to this proceeding, was filed only on the first day of May, 1889, and was promptly met by an answer denying all the allegations of complainants' bills, all demanding strict proof of the same. Six days thereafter the cause was set down for final hearing, and was submitted on the evidence taken before John A. Klein's administratrix had been made a party defendant. In this state of the case, surely it cannot be insisted that any decree, fixing liability on John A. Klein's estate, should have been rendered in the court below. '

Furthermore, the record before us nowhere discloses the date of the transfer by endorsement of this note of $3575, by George Klein as attorney-in-fact. Whether this transfer was made before John A. Klein's insanity began, or afterwards, nowhere appears. If this had been an issue presented by the pleadings (and it was not), it would have been incumbent on the complainants to make out their case by some sufficient evidence. The evidence fails to disclose when, or under what circumstances, the transfer of the note was made, and the payment of the same by Julius Klein to the endorsee is not shown to have been fraudulent.

The chancellor was thoroughly warranted in the views he entertained, and the decree is,

*Affirmed.*

*Wade R. Young*, for appellants, filed a lengthy suggestion of error, making the points noted in the response, and in addition to the authorities given in his former brief cited the following in sup-

port of the position that the good-will was a part of the assets of the partnership : *Hudson* v. *Trenton, etc., Mfg. Co.*, 1 C. E. Green (N. J.), 475–478 ; *Izard* v. *Bodine*, 1 Stockt. 311 ; *Sharp* v. *Morrow*, 6 Monroe, 300 ; *Remsen* v. *Remsen*, 2 John. Ch. 501 ; Story on Part., § 99 ; *Williams* v. *Williams*, 4 Sand. Ch. 405 ; *Holdin* v. *McMakin*, 1 Pa. Sel. Cas. 270 ; *Dougherty* v. *Van Nostrand*, 1 Hoff. Ch. 68 ; *Biniger* v. *Clark*, 10 Abb. Pr. (U. S.) 264 ; *Willet* v. *Blandford*, 1 Hare, 253 ; *Bradbury* v. *Dickens*, 77 Beav. 53 ; *Wedderburn* v. *Wedderburn*, 22 Ib. 84 ; *Mellersh* v. *Keen*, 27 Ib. 236 ; *Smith* v. *Everett*, Ib. 446 ; *Crawshay* v. *Collins*, 15 Ves. 218 ; Story Part., §§ 337, 341.

The executrix of Jno. A. Klein was concluded by the evidence offered at the trial. Her solicitors were present and took part in the hearing without objection. The court in the opinion overrules *Hart* v. *Bloomfield*, 66 Miss. 100.

Woods, C. J., delivered the opinion of the court in response to suggestions of error, filed by appellants' counsel, to the former opinion delivered in this cause.

The elaborate argument submitted with the suggestions of error is, in the main, a new and strong presentation of the original case, and as such can receive no response.

The 2d and 3d suggestions of error show that counsel has wholly misapprehended our former opinion. These suggestions of error are as follows, viz :—

" 2. Your honorable court has erred in deciding that the good-will of an established insurance business, which has been repeatedly bought and sold, and which has a value fixed and recognized by the custom of the trade, is not an asset of a partnership." We have already said counsel has totally misapprehended our views, as contained in the former opinion, and we need only say it is the counsel who is in error as to what was decided by us.

" 3. Your honorable court has erred in deciding that such an asset, upon the dissolution of a partnership by the death, or insolvency, or retirement of one partner, survives to the continuing partner, and that he can appropriate the good-will of the business,

to the exclusion of the creditors of the insolvent partner, by personally soliciting the customers of the old business, and thus depreciate and destroy the trust property before terminating the trust relation."

Here, also, the counsel is amazingly inaccurate in his understanding of our former opinion, and appears to have wholly misinterpreted our views.

To the suggestion of error involved in our affirming the decree of the chancery court, because the court did not make an interlocutory decree referring the cause to a master to state an account, we reply that it is not the duty of the court to refer when, on the proofs taken and submitted to the court, it is manifest that there is nothing calling for an account, or nothing on which an account could be framed. The action of the chancery court rested upon this well-known rule of law, and we saw no reason to take issue with that court on its action in entering a final decree dismissing complainants' bill, without a reference to a master for the purpose of stating an account.

The 4th and last suggestion of error is, "That the court erred in deciding that there is no issue regarding the validity of the payment of the note of Julius M. Klein & Co. in favor of John A. Klein." It is matter of regret to us that a question of this character should be raised, after due deliberation, by counsel. The pleadings no where contain the remotest allusion to this matter, and much less do the proceedings present any such issue. The existence even of such a note is first disclosed incidentally in the progress of the cause, in the deposition of a witness. We repeat, with all possible emphasis, that no issue regarding the validity of the payment of the note in question was ever made by the pleadings.

Counsel invites our attention, in considering this 4th suggestion of error, to the fact (as he understands the matter) that "in deciding that the executrix of John A. Klein was not concluded by the evidence offered at the hearing, you (we) have unwittingly overruled the decision rendered at the last term, in *Hart* v. *Bloomfield.*" Here, too, counsel is again clearly mistaken. In *Hart* v. *Bloomfield*

it was argued that a reversal must be had because the case was set for a hearing one day before the expiration of the five months allowed by law for the taking of proof after answer filed. The court refused to reverse because it was held that the five months had expired, and because, even if true, as contended by that appellant, the period of five months lacked one day of having expired, complainant was present by her counsel and took part in the hearing of the cause without objection on her part. Here, in the case before us, the executrix of the will of John A. Klein, deceased, was made a party fourteen months after the filing of the original bill, and after all the proofs had been taken by the original parties. She had answered that she was simply trustee of the dead man's estate, and that she knew nothing whatever of the matters involved in the litigation, and required strict proof of every charge affecting her testator's estate. Six days only after this executrix had filed this answer, the cause was set down for hearing on the pleadings and proofs. How markedly different this case from that of *Hart* v. *Bloomfield*, and how easily distinguishable!

The case in all its aspects was carefully and thoroughly examined and considered originally; it has again received such treatment at our hands, and we adhere to our former opinion.