[No. 14211. Department One. May 11, 1918.]

PEOPLES SAVINGS BANK, *Appellant,* v. FIRST NATIONAL BANK *et al., Respondents.*[1]

CONTRACTS—VALIDITY—UNLAWFUL COMPETITION—WHO MAY QUESTION. A party cannot invoke the aid of the courts to restrain an unlawful interference with competition by the fixing of a three per cent rate for savings deposits in banks, where the effect thereof would be to give such party the advantage of its equally unlawful contract fixing a four per cent rate.

ASSOCIATIONS—DISSOLUTION. A voluntary clearing house association without agreement for any specified period of time, may be dissolved at any time at the will of the majority of its members.

BANKS AND BANKING—INJUNCTION—CLEARING HOUSE ASSOCIATION—DISSOLUTION—POWER OF COURTS. Since the violation of a contract will not be restrained where it cannot be specifically enforced, the courts will not restrain the dissolution of a voluntary clearing house association the duties of which were those of an agent and fiduciary representative of its members, involving the exercise of skilled knowledge and judgment which cannot be specifically enforced by the courts.

Appeal from a judgment of the superior court for King county, Smith, J., entered December 1, 1916, dismissing an action for an injunction, tried to the court. Affirmed.

[1]Reported in 173 Pac. 52.

*Piles & Halverstadt* (*Clyde Merchant,* of counsel), for appellant.

*Peters & Powell* and *Donworth & Todd,* for respondents First National Bank *et al.*

*Hartman & Hartman,* for respondent Northwest Trust & Safe Deposit Company.

MAIN, J.—This action was brought for the purpose of restraining the dissolution of the Seattle Clearing House Association. At the institution of the action, a temporary restraining order was issued. The trial resulted in a judgment denying an injunction and dismissing the action. From this judgment, the plaintiff appeals.

The controlling facts may be stated as follows: The Seattle Clearing House is a voluntary association. The members thereof are sixteen banks in the city of Seattle. All the members of the association, including the appellant, were engaged in taking two kinds of deposits, known as commercial deposits and savings deposits, except that one bank did not take commercial deposits. The association was organized many years ago for the mutual convenience of its members. The appellant had been a member of the association since the year 1900. The association was governed by what is referred to as the articles of the Seattle Clearing House Association. These articles provided, among other things, for the promulgation of rules and regulations. One of the rules which had been made in pursuance of the articles is referred to as rule 4, which provided that the members of the association should not pay interest at a greater rate than four per cent per annum upon savings deposits. This rule was assented to by all the members of the association, and had been in existence for a number of years prior to the year 1916.

During the latter part of the year 1915, there was discussed by the respective officers of the various members of the association the question whether business conditions and sound banking did not require a reduction in the maximum rate of interest that should be paid upon savings deposits. Without following the details of this discussion, it may be said that, on January 14, 1916, a meeting of the association was held at which all the member banks were present, and a rule was there adopted, over the protest of the appellant bank and two other banks, fixing the maximum rate of interest on savings accounts at not to exceed three per cent per annum, to be effective July 1, 1916; twelve of the member banks voting for the rule, three against, and one not voting. After the rule became operative, two of the banks—the appellant and one other—refused to observe it, and continued to pay interest at the rate of four per cent per annum upon savings deposits. This caused further discussion, and finally resulted in a resolution being passed for the dissolution of the association. The object of the association had been the effecting, at one place, of the daily exchanges between the members, the establishing of rules and regulations in matters of common interest and in matters arising from or affecting the relations with banks in other localities, and the fostering of sound and conservative methods of banking. In the conduct of the banking business, each bank daily received a number of checks drawn on other banks in the city of Seattle, which the receiving banks must present to the respective banks on which they were drawn, for the purpose of collecting the amounts thereof. Without the aid of some central association, or the meeting of representatives of the various banks in the city of Seattle at some point at a designated time, at which all banks were represented, it would be necessary for each bank

to present for payment such checks on each of the other banks on which they were drawn. For the purpose of avoiding this difficulty, the Seattle Clearing House Association was organized, at which each of the banks, parties thereto, daily on banking days attended at designated hours for the purpose of clearing their respective checks. For the purpose of paying balances, the members of the Clearing House Association each deposited with the association, subject to the control of its executive committee, a certain amount of gold coin, for which the depositors received what are known as clearing house certificates. When the daily balances were struck in the clearing house, they were covered by these certificates rather than by actual cash.

The appellant claims that the attempt to dissolve the clearing house was not made in good faith and that a new clearing house association would be formed, to which no member would be admitted which did not agree to the rate of interest to be paid upon savings deposits fixed by the association. It is also claimed that the changing of the rate of interest in rule 4 from four per cent to three per cent was the result of a conspiracy on the part of the Seattle banks and banks of certain other cities, and that the fixing of the maximum rate of interest to be paid upon savings deposits at three per cent per annum was an unlawful interference with competition, as it related to the price to be paid for savings deposits. If the fixing of the rate of interest at three per cent was unlawful, it must necessarily follow that the rule as it previously read, fixing it at four per cent, was likewise unlawful. The appellant was a party to the four per cent rule, and if that rule was an unlawful interference with the competitive price that should be paid for the use of money, the appellant was a party thereto. It would seem plain that the appellant cannot come into court seeking to set

aside the three per cent rate as unlawful, when, if this were set aside, it would give the appellant the advantage of a previous four per cent rate which was likewise unlawful. It may be argued, however, that, if the four per cent rule were unlawful as a restraint upon competition, this should be eliminated and the articles and rules enforced subject to this elimination. If this were done, the court would be making a new agreement for the parties, as one of the terms of the agreement under which they had been previously operating provided for the four per cent rate. The court could not well eliminate the four per cent rule and then say that the members should be bound by the other terms of their agreement, as this would be enforcing an arrangement between the parties which they had not themselves made. It must be remembered that this was a voluntary association and that neither the articles nor the rules prescribed that it should be continued for any specified length of time. The courts will not interfere to prevent the expulsion of a member from a voluntary association unless "pecuniary and property rights are involved." State ex rel. Cicoria v. Corgiat, 50 Wash. 95, 96 Pac. 689; 5 C. J. 1357.

In the case of a contract of partnership containing no stipulation as to the time during which it shall continue, it exists no longer than the parties thereto may mutually consent, and may be dissolved by either party at his own will at any time; even when the partnership articles fix a certain period of time, it may be dissolved at any time at the will of one partner so as to put an end to the partnership, in the latter case there being a right of action for damages for breach of the contract; but where no time is fixed in the articles of partnership, there exists no such right. Karrick v. Hannaman, 168 U. S. 328.

If a partnership may be thus dissolved by any party thereto, it would seem that a voluntary association would at least be equally as subject to dissolution at the will of the majority of the members thereof.

There is another reason why the judgment in this case should be affirmed. The Clearing House Association was the agent and fiduciary representative of all the banks forming the association. *Yardley v. Philler,* 167 U. S. 344.

.The duties of such agent to the member banks were continuous. They involved the exercise of skilled knowledge and cultivated judgment concerning the business transacted. Such contracts will not be specifically enforced by the courts. *Texas & P. R. Co. v. Marshall,* 136 U. S. 393; *Marble Co. v. Ripley,* 77 U. S. 339.

While the present action was in form one for an injunction, it was in effect an action for specific performance. A holding that the dissolution of the Clearing House Association be restrained would be equivalent to a holding requiring its continuous operation with the usual service to its members. The violation of a contract will not be restrained when such a holding would indirectly or negatively compel the performance of duties the specific performance of which would not be decreed if the action were brought in that form. *Arthur v. Oakes,* 63 Fed. 310, 25 L. R. A. 414.

The briefs in this case devote much space to the question whether the rule fixing the maximum rate of interest to be paid upon savings deposits at three per cent per annum was an unlawful restraint of competition; but we have found it unnecessary to discuss or decide this question, because, as above pointed out, the appellant is not in a position to invoke the aid of the court when, if successful, it would result in another

rate which the appellant was a party to which would likewise be unlawful.

The judgment will be affirmed.

ELLIS, C. J., WEBSTER, FULLERTON, and PARKER, JJ., concur.