[No. 27850. Department Two. August 5, 1940.]

JAMES I. POLLOCK, *Appellant*, v. J. W. RALSTON, *Respondent.*[1]

[1]Reported in 104 P. (2d) 934.

*Chavelle & Chavelle,* for appellant.

*Bogle, Bogle & Gates* and *Lynwood W. Fix,* for respondent.

JEFFERS, J.—This is an appeal by plaintiff, James I. Pollock, from a judgment rendered by the superior court for King county, in an action brought against defendant, J. W. Ralston. The action grows out of the voluntary dissolution of the firm of Pollock & Ralston, a partnership composed of the parties above mentioned.

On February 18, 1938, Pollock signed a complaint against Ralston, but this complaint seems never to have been filed and does not appear in the record. On October 31, 1938, plaintiff filed a "second amended complaint," in which he prayed for an accounting, a distribution of the assets of the partnership, including the good will, and for recovery of fifty thousand dollars damages. On November 5th, plaintiff made written

demand for a jury and deposited a jury fee. Defendant moved to strike the demand for a jury, and after argument before a judge other than the one who finally tried the case, the demand for the jury was stricken, without prejudice to a further demand, and plaintiff was granted leave to file a third amended complaint, which was filed on December 31, 1938, and an answer and cross-complaint thereto was filed by defendant. Plaintiff again made demand for a jury and deposited his fee, and again defendant moved to strike the demand, and after argument, the demand for a jury was stricken, and the cause continued as a nonjury case.

Thereafter, the matter was tried to the court, and on August 18, 1939, a decree was entered denying plaintiff any relief. From this decree, plaintiff has appealed, and makes the following assignments of error: The trial court erred (1) in denying plaintiff's demand for a jury trial; (2) in holding that the partnership was a professional partnership; (3) in holding that good will did not exist; and (4) in failing to enter judgment in favor of plaintiff.

For a number of years prior to February, 1934, the parties to this action had been in the employ of Murry Jacobs Company, which had the agency for the sale and distribution of the products of Ross Carrier Company and Automatic Transportation Company, manufacturers of carriers for lumber mills and factories. Appellant had acted in the capacity of salesman, and respondent as office manager.

In the early part of February, 1934, Ross Carrier Company, being dissatisfied with the manner in which Murry Jacobs Company was representing them, offered to the parties to this action the agency for the sale and distribution of its products. This offer was accepted. The agreement between the parties to this proceeding and Ross Carrier Company was never reduced to a

formal contract, but the working agreement was embodied in three letters and a telegram. The partnership was to represent the Ross Company on a commission basis, but each partner was guaranteed a minimum of $175 per month. No definite time was fixed for the duration of this agreement.

On or about February 10, 1934, the parties to this action entered into an oral partnership agreement for an indefinite term, under the name of Pollock & Ralston, and opened up a place of business at 1522 Fourth avenue south, in Seattle. In addition to Ross Carrier Company, the partnership also represented Michigan Power Shovel Company, a subsidiary of Ross Carrier Company, Automatic Transportation Company, and five other companies, all manufacturers of various types of transportation equipment. The territory represented by the firm covered Washington, Oregon, Idaho, Northern California, and British Columbia. The partnership, in addition to selling equipment, also carried a large stock of parts for the various machines. There was no formal contract ever entered into between the partnership and any of the companies represented, but it appears that the partnership was to represent these companies on a commission basis, and that the contracts were terminable at will.

It does not appear that any capital was invested by either partner; in fact, it appears that the Ross Carrier Company advanced to the partnership funds with which to furnish an office and commence business. Appellant acted as field man, traveling in the territory for the purpose of contacting the trade and making sales, and respondent acted as the office man. The partnership prospered, its net profits increasing each year from about $4,800 in 1934, to approximately $13,200 in 1937.

On February 9, 1938, Ross Carrier Company sent a

telegram to the partnership, expressing disappointment in the lack of sales and loss of prestige of the company in the territory, and advising the firm that it would no longer represent Ross Carrier Company. In the telegram above referred to was an offer to temporarily retain the services of Ralston until a new agent could be procured. On February 12, 1938, after some discussion between the partners, respondent gave appellant written notice that the partnership was dissolved. On February 13th, Ralston wired Ross Carrier Company that he would accept their offer to retain him to protect the interests of the company, pending the organization of a new sales set-up.

On February 15, 1938, respondent mailed notices on behalf of the partnership to all the companies represented, advising them that the firm of Pollock & Ralston had been dissolved, but that their interests would be taken care of for a reasonable time, until they could obtain other representation. Copies of these letters were placed upon appellant's desk by Mr. Drake, the bookkeeper. On February 16, 1938, respondent wrote letters on his own behalf to the respective companies which had been represented by the partnership, wherein he solicited the business of these firms for himself. Thereafter, Ralston obtained the agency for most, if not all, of the companies represented by the partnership, with the exception of Ross Carrier Company. He conducted the business under the name of J. W. Ralston Company and continued his office at the same address as the partnership had occupied. A large sign reading "Ross Carrier Co." remained in place, but the old partnership sign of "Pollock & Ralston" was removed, and a sign reading "J. W. Ralston Co." was put up.

In March, 1938, a representative of Ross Carrier Company came out from the factory, and a contract was entered into between that company and General

Machinery Company of Portland, Oregon, whereby the latter company became the sales and distributing agent in the northwest for Ross Carrier Company. Respondent was kept in the employ of Ross Carrier Company, at four hundred dollars per month, for an indefinite period, and was to remain in the Seattle office and assist General Machinery Company in the territory, he (Ralston) being familiar with the territory and the parts needed to service the machines then in use. Respondent has received a salary from Ross Carrier Company since about the middle of February, 1938, but has received no commission on any machine or parts sold since the dissolution of the partnership.

The above is a fair statement of the general facts relative to the situation presented herein, as established by the evidence. Additional facts will be stated in connection with the argument as we proceed.

■ We shall first consider whether or not the court erred in refusing appellant a jury trial.

"The rule is almost universal that one partner cannot sue his co-partner at law, without alleging and proving a settlement of the partnership indebtedness, the accounting together of the partners and the ascertainment of a balance and a promise, either express or implied, to pay that balance." *Stevens v. Baker,* 1 Wash. Terr. 315.

See, also, *Kwapil v. Bell Tower Co.,* 55 Wash. 583, 104 Pac. 824; *Potter v. Scheffsky,* 139 Wash. 238, 246 Pac. 576; *Moberg v. McCauley,* 150 Wash. 494, 273 Pac. 739.

In 47 C. J. 805, § 252, the rule is stated as follows:

"As a partnership continues after its dissolution for the purpose of collecting its claims, paying its debts, and adjusting its affairs, an action at law cannot be brought by one partner against another for money alleged to be due him on account of partnership transactions, until after a settlement, even though the partnership has been dissolved. But it is otherwise where

the firm has dissolved, a balance has been struck, liabilities have been discharged, and affairs have been settled between the partners, or where terms or items not settled have been abandoned, so that an accounting is not necessary in order to ascertain the amount due each member. In some jurisdictions, however, after dissolution but prior to a settlement, a partner has a direct action at law against his copartner for moneys collected and not paid over. A partner may sell his interest to his copartners and recover the purchase price in an action at law, and it is immaterial whether such interest is encumbered or not by the terms of the partnership, or whether its amount is fixed or the price agreed on. Specific performance of an agreement to sell may be compelled at the suit of the purchasers."

See, also, 4 Bancroft's Code Pleading 3782, § 2129.

It is apparent, from a reading of the third amended complaint, upon which this cause was tried, that there has been no settlement or accounting of the partnership business, either before or subsequent to its dissolution. In paragraph 6 of the complaint, it is alleged that, at the time of the dissolution, there was a substantial amount of business pending, which was about to be closed, and which was thereafter closed, and from which appellant has received no commission. Paragraph 12 of the complaint alleges:

"That the defendant is attempting without payment to take over to himself to the elimination of said plaintiff, all of the assets and good will of the said partnership; that there is further on hand large sums of money in the bank and accounts receivable, petty cash balance and balance due from the Ross Carrier Company and for further business which is to be consummated, the good will of the business and the parts and equipment belonging to the said partnership and that a receiver should be appointed, otherwise the property will be dissipated, destroyed and wasted."

The prayer for relief is as follows:

"(1) That a receiver be appointed to take charge of said business and the books and affairs thereof.

"(2) That an equitable distribution of the assets including the good will of the said business and the sale by the said agencies which said partnership represents be made by the court through its receiver.

"(3) That the plaintiff recover the sum of $50,000 damages together with his costs and disbursements herein to be taxed.

"(4) And that the plaintiff have such other and further relief as to the court may seem just and equitable."

While it is alleged in the answer to the third amended complaint that most of the assets of the partnership have been distributed, it appears that there are still some assets left, and that at least one item is in dispute. Also, the allegations of the complaint and the answer are at variance over whether a distribution has been made.

Appellant contends that the real issue in this case is whether or not respondent is liable in damages for wrongfully converting the good will of the partnership; and that this is an issue of fact, which he was entitled to have tried by a jury.

It must be borne in mind that the trial court did not, of course, have the evidence before it at the time it passed upon the motion to strike the demand for a jury, but could only judge the matter from the pleadings. In determining whether or not an action is one at law or in equity, all the pleadings and the issues raised thereby must be considered. *Thiel v. Miller*, 122 Wash. 52, 209 Pac. 1081, 26 A. L. R. 523; *Santmeyer v. Clemmancs*, 147 Wash. 354, 266 Pac. 148; *Theodore v. Washington Nat. Inv. Co.*, 164 Wash. 243, 2 P. (2d) 649.

After a consideration of these pleadings, we are of the opinion this is, in fact, an equitable action for an accounting, and as such was not triable by a jury. See

*Garey v. Pasco,* 89 Wash. 382, 154 Pac. 433; *Levy v. Simon,* 119 Wash. 179, 205 Pac. 426.

We desire also to call attention to the further rule that the trial court has a wide discretion in determining the nature of an action, and this discretion will not be disturbed in the absence of a clear abuse thereof. *Gatudy v. Acme Construction Co.,* 196 Wash. 562, 83 P. (2d) 889.

We are therefore of the opinion the trial court properly struck the demand for a jury trial.

■ Appellant next contends the trial court erred in refusing to find that the element of good will was existent in this case, and that appellant should recover for the alleged appropriation of such good will.

We find, in Story on Partnership (7th ed.), 157, § 99, the following definition of good will:

"This good-will may be properly enough described to be the advantage or benefit which is acquired by an establishment beyond the mere value of the capital, stock, funds, or property employed therein, in consequence of the general public patronage and encouragement which it receives from constant or habitual customers, on account of its local position or common celebrity, or reputation for skill or affluence, or punctuality, or from other accidental circumstances or necessities, or even from ancient partialities or prejudices."

See, also, *In re Brown's Will,* 242 N. Y. 1, 150 N. E. 581, 44 A. L. R. 510.

We desire to also call attention to the definition of good will found in the case of *Stanton v. Zercher,* 101 Wash. 383, 172 Pac. 559.

We are of the opinion that, under the facts of this case, there was no good will of any value which could be or was appropriated by respondent after dissolution. The partnership here involved was a mere agency partnership, holding agency contracts, terminable at will,

which contracts were secured and held purely because of the skill and experience of these parties in the sale of specialized machinery and parts therefor. The partnership was dissolved, and the partnership name of Pollock & Ralston expired upon the dissolution and was not thereafter used by respondent, except in liquidation of the affairs of the partnership. The business of the partnership was not continued. Respondent did not hold himself out as the successor to the partnership business.

"A partner cannot be charged with appropriating the good will after dissolution because he individually solicited the business of the firm's patrons without using the firm name, or because after dissolution he continued to use his own name in similar business, even though his own name had been the firm name, there being no attempt to deceive people into believing that they were dealing with the old firm." 47 C. J. 1180, § 871.

See 20 R. C. L. 1024, § 266.

In the case of *Jones v. Cadenas,* 200 App. Div. 635, 193 N. Y. Supp. 513, plaintiff and defendant were partners in selling fruit as commission men. The partnership expired by its terms, and thereafter defendant proceeded to do business in his own name, soliciting the business of the persons from whom the partnership had obtained fruit. Defendant did not continue using the partnership name and did not advertise himself as the successor of the partnership. The opinion in the cited case contains the following statement:

"He had a perfect right to notify these people that he was going to do business individually after the dissolution of the partnership, and ask for their patronage."

It was held there was no appropriation of good will.

In the case of *Rice v. Angell,* 73 Tex. 350, 11 S. W. 338, 3 L. R. A. 769, the firm of Angell & Rice had been

formed to sell fire and marine insurance. The firm continued for two years, when it was dissolved by defendant, who thereafter conducted an insurance agency in his own name. This action was brought to recover for good will alleged to have been appropriated by defendant. We are of the opinion the following quotation taken from the cited case is particularly in point here:

"The agencies which the partnership had secured were determinable at the will of the principals, and there could be no property in them. They actually ceased upon a dissolution of the firm, and each partner was left free to continue business in his own name and to procure for himself alone the employment of such of the insurance companies formerly represented by the firm as might desire his services.

"The success of either in controlling the former custom of the firm depended upon his own personal capacity for attracting and holding patronage, and not upon anything he had received upon the dissolution more than was received by the other. Each had the same opportunities as the other for competing for their old business, and if one had any advantage over the other in that competition it could only have been by reason of his personal qualifications, in which the other partner by reason of the contract of partnership certainly acquired no right which continued after the relation of partners had ceased to exist."

To the same effect is *Tierney v. Klein,* 67 Miss. 173, 6 So. 739, 8 So. 424, and *Smith v. Smith,* 51 La. Ann. 72, 24 So. 618. See, also, *Lloyd v. Rahe,* 234 App. Div. 626, 252 N. Y. Supp. 135.

Appellant earnestly contends the case of *Stanton v. Zercher, supra,* is squarely in point, and is conclusive of the fact that good will existed in the instant case. We do not believe the *Stanton* case is in point. In that case, an action was brought on certain promissory notes given by the defendant to the plaintiff, in payment for an insurance business. In the answer filed

by the defendant, he alleged affirmatively that plaintiff had misrepresented the reputation of the business and the volume thereof, and that the books had been padded, etc., also alleging that the good will was of little or no value.

While it must be admitted that good will may be present in such a business, however, in our opinion, the facts in the cited case are so different from those in the case at bar as to be in no way applicable herein. In the *Stanton* case, the plaintiff sold his insurance business to the defendant, and defendant bought and paid for good will. The defendant was to continue using the same name under which the agency had been operated when owned by plaintiff. There was no dissolution of the business involved, but it was a sale of a going business, including the name under which it was known, and the sale was to carry the agencies which the plaintiff represented.

The case of *Moore v. Rawson*, 185 Mass. 264, 70 N. E. 64, cited by appellant, is also distinguishable on the facts, as are the other cases cited by appellant on this point.

Appellant and respondent each put an expert witness on the stand to testify relative to the question of good will. Willis T. Batcheller testified on behalf of appellant, and a Mr. Sparling testified on this question for respondent. Both of these gentlemen testified as experts. After an examination of this testimony, we agree with the statement made by the trial court in its memorandum decision, where, in referring to this testimony, the court stated:

"That the partnership here in question had no good will of a salable value after dissolution seems not only established by the above authorities, but also established by what seems to me to be the preponderant expert testimony herein."

Appellant also contends that respondent solicited the business of the partnership for his own individual benefit, before dissolution, and without notifying appellant, and was guilty of a breach of the fiduciary relationship which existed between appellant and respondent, and that respondent is liable in damages for the appropriation of the good will and for the profits earned.

We shall set out as briefly as possible the facts as established by the testimony herein, which form the only basis of this contention. In December, 1937, the Ross Carrier Company sent an invitation to respondent to come to Cleveland, Ohio, to attend a road show at which the Ross products were to be displayed, and also to visit their factory at Benton Harbor, Michigan. Respondent left Seattle January 16, 1938, and returned January 31, 1938. The first plan was that the partnership would pay one-half the expense of the trip, and the Ross Company the other half. However, appellant objected, and as a result of such objection, the entire expense of the trip was paid by the Ross Company. Respondent, while on this trip, and during a short stop in Chicago, called the factory of Automatic Transportation Company, but did not visit the plant, and had no contact with that firm other than the telephone conversation. It appears from the testimony of respondent that, while on this trip, he was informed by Ross Carrier Company that they were not satisfied with the sales made by the partnership in this territory, and that respondent communicated this fact to appellant, upon his return.

On January 29, 1938, a telegram from the Ross Company to J. W. Ralston was received at the office of the partnership. The contents of this telegram do not appear herein. However, from the circumstance that this telegram was addressed to respondent only, and

not to the partnership, appellant seems to draw the inference that respondent had solicited the business of the Ross Company for himself while on this trip east. We do not find one word of testimony in this record to indicate, or from which an inference can be drawn, that respondent on his trip east solicited for himself the business of the Ross Company, or any other concern with which the partnership had been doing business.

Appellant also concludes, from the fact that the Ross Company terminated their connection with the partnership on February 9, 1938, which was shortly after respondent returned from the east, and then hired respondent to look after their interests until another sales set-up could be effected, that respondent wrongfully solicited the business of the Ross Company for himself while on his trip. As we have stated, respondent testified that he did not solicit the business of the Ross Company, and D. H. Ross, treasurer of the Ross Company, testified that respondent at no time mentioned anything about obtaining their account for himself, or that he was going to sever his relations with appellant. Mr. Ross further testified that no arrangement had been made with respondent prior to the telegram of February 9, 1938. This witness further testified that the company had several applications for the sale of their products in this territory, and after respondent left, they decided to place the agency with General Machinery Company, of Portland; that, since the dissolution of the partnership, respondent had received no commission from the Ross Company.

Appellant states in his opening brief that the letters sent out by respondent to the different companies, advising them of the dissolution of the firm, were without his approval or knowledge. This statement is not borne out by the record. Mr. Drake, bookkeeper for

the partnership, testified that he put copies of these letters on appellant's desk. While appellant testified that he had nothing to do with sending out these letters, and did not approve thereof, he did not deny that copies were placed on his desk. We find nothing in this entire record to indicate that respondent solicited any business for himself until after his written notice of dissolution of February 12, 1938. We are of the opinion appellant's entire argument is based on inference, which in turn is based upon a sequence of events only, and not upon facts established by the record which tend to show, or from which an inference can be drawn, that respondent solicited any of the partnership accounts for himself prior to dissolution.

Appellant contends the trial court erred in holding that the partnership in the instant case was a professional, rather than a trading or commercial, partnership. We do not think the trial court held the partnership was a professional one, but rather that, under the facts established, it partook more of the nature of a professional than a trading or commercial partnership; but, regardless of this statement of the trial court, we are satisfied that, under the established facts, there was no good will after the dissolution of the partnership.

We are also of the opinion that the contention of appellant that respondent is estopped from asserting that, if good will did exist in this case, it had no salable value, is without merit, for the reason that no facts were established which would make the doctrine of estoppel applicable.

The partnership, having been formed for an indefinite period, was subject to termination at any time, at the will of either of the parties thereto. *Peoples Savings Bank v. First Nat. Bank,* 102 Wash. 436, 173

Pac. 52; *Peabody v. Pioneer Sand & Gravel Co.*, 172 Wash. 313, 20 P. (2d) 15.

We are of the opinion respondent was within his rights in terminating the partnership, and also within his rights, under the facts in this case, in soliciting, after the dissolution of the partnership, the business of the firms and individuals formerly represented by the partnership, and that no breach of any fiduciary relationship on the part of respondent was shown.

The judgment is affirmed.

BLAKE, C. J., STEINERT, and BEALS, JJ., concur.

