[No. 32606. Department Two. November 18, 1954.]

CHARLES W. HOPKINS, *Respondent*, v. JOSEPH SMITH *et al.*, *Appellants.*[1]

[1]Reported in 276 P. (2d) 732.

*Rummens, Griffin, Short & Cressman*, for appellants.

*Ralph B. Potts*, for respondent.

WEAVER, J.—This is an action for a money judgment, the foreclosure of a lien for labor and materials, and the allowance of attorney fees and costs.

Plaintiff, a young man newly engaged in the construction business, was a client of defendant, a practicing lawyer, at the time the alleged cause of action arose.

Jennie D. Sayre, another client of defendant, had inherited the vendee's interest in a real-estate contract covering the real property involved. Being a nonresident, she authorized defendant to sell her interest in the property for forty-five hundred dollars. In addition, defendant was authorized to do such remodeling as he deemed necessary to make the house salable. At some time prior to trial, defendant became the owner of the vendee's interest in the property. Neither the date nor the details of this transaction appear in the record.

In 1951, defendant had the house raised on temporary supports and the basement excavated, at his expense. During the fall of that year, the parties entered into an oral agreement, the terms of which are uncertain and in dispute. It is difficult, from the record, to separate the actual agreement of the parties from the many things they discussed as possibilities of the transaction.

However, the parties seem to be in agreement on the following: (a) the house was to be sold; (b) Mrs. Sayre was to be paid forty-five hundred dollars; (c) each party was to be reimbursed the amount contributed to improvements and remodeling; (d) the profit was to be divided between them.

Plaintiff testified:

"The agreement was that Mr. Smith [defendant] and I

would do a certain amount of work *as he enumerated*; . . ." (Italics ours.)

Although remodeling of the house was discussed, the details and extent of it were never definitely determined, prior to termination of the relationship.

The trial court found

". . . that said Hopkins [plaintiff] having full confidence and faith in his attorney, said Joseph Smith [defendant], went ahead *without any definite agreement*, and began putting in the basement [walls] . . ." (Italics ours.)

After plaintiff put in the basement walls, he sent defendant a statement dated November 14, 1951, for labor and materials. The statement contained the following:

"Speculative Residence at 5513 44 Avenue S.W. for Joseph Smith

"All costs for work past and present underway are billed at actual labor and material with a 6% overhead cost for trucking, shop and supervision. All profits from the disposal or rental of the residence will be equally shared by Mr. Smith [defendant] and the contractor [plaintiff]. *One half of each billing's expenses will be due contractor* [plaintiff] *by Mr. Smith* [defendant] *and with this payment the total obligations will be paid by the contractor."* (Italics ours.)

This statement was for $930.77. At the end, it stated:

"½ payment $465.39."

The crux of their disagreement (as indicated by the statement of November 14, 1951, quoted *supra*) would appear to be whether defendant was required to pay for one half of the labor and materials, as plaintiff progressed with the work. Plaintiff, however, seems to have changed his position, for he later filed a lien and started suit for $930.77, the full amount of his November 14th statement. Defendant contends plaintiff is not to receive payment until the house is sold. (Whether the transfer of Mrs. Sayre's interest to defendant constitutes a sale within the agreement of the parties, is not a question presented on this appeal.)

Subject to a possible exception, which we will discuss later, plaintiff abandoned future work on the house in November, 1951. November 25, 1951, plaintiff wrote defendant stating his inability to continue with their arrangement. Plaintiff wrote:

"I am turning this project over to your management to do as you see fit and am intrusting my cash investment into your hands. I hope it become [sic] a very profitable investment for me and my family. I would appreciate some kind of an agreement between ourselves before I step aside and become an investor as I am sure both of us want to know where we stand."

Defendant, who thereafter spent approximately thirteen thousand dollars remodeling the house, has lived in it since December, 1952.

The trial court found that defendant had represented to plaintiff that he, defendant, would

". . . actively get out and sell the house but that the court cannot find any evidence that said Joseph Smith [defendant] did so."

The evidence does not preponderate against this finding of fact.

The court entered judgment against defendant for $468.77 upon plaintiff's claim, ordered the lien foreclosed, and allowed $250 attorney fees and one dollar cost for filing the lien. Defendant appeals. Plaintiff has not cross-appealed from that portion of the judgment which reduces the amount of his claim.

Appellant argues that one partner cannot maintain an action against his copartner until after an accounting between the partners. *Pollock v. Ralston*, 5 Wn. (2d) 36, 104 P. (2d) 934 (1940).

Although the parties in their testimony referred several times to their relationship as a partnership, a careful review of the record discloses that the facts are not sufficient to warrant such a conclusion. The facts do not meet the test of a partnership announced in *Bengston v. Shain*, 42 Wn. (2d) 404, 409, 255 P. (2d) 892 (1953), and cases cited. There was not sufficient

" . . . community of interest in, or a joint ownership of, the business itself, accompanied by a joint right of control of its affairs." *Bengston v. Shain, supra.*

■ Appellant's second group of assignments of error—that respondent's lien notice was not timely filed within ninety days after completion of the work—is well taken.

Respondent testified that he "pulled out of future work" in November, 1951. He further testified, however, that appellant later asked him to repair the steps to the house. Appellant denies ever having made this request. The additional work—placing two temporary treads on the front steps—was completed February 4, 1952. The lien was filed April 2, 1952.

Respondent never billed appellant for this work. Charge for it is not included in the itemized statement of November 14, 1951, in the notice of claim of lien, nor in this action.

■ If work is done or materials are furnished to complete the original contract, or remedy some defect in the work done or materials furnished under the original contract, then such work or the furnishing of additional materials extends the time for filing a lien. If, however, the work is done or materials are furnished under a new and independent agreement, made after the original contract or continuing employment is ended, then such work or the furnishing of additional materials does not set the time running so as to preserve a lien for the earlier work. *Swensson v. Carlton,* 17 Wn. (2d) 396, 135 P. (2d) 450 (1943), and cases cited.

Even accepting respondent's testimony that appellant requested work done on the steps, it was a new and independent agreement not connected with respondent's previous work. It was error to allow respondent's lien and attorney fees for its foreclosure.

In summary:

(a) The personal judgment against appellants (to whom we have referred in the singular throughout this opinion) for $468.77, with interest at the rate of six per cent per

annum from date of judgment, together with costs in the trial court, is affirmed.

(b) That portion of the judgment establishing and foreclosing a labor and materials lien against appellants' property, together with attorney fees and filing fees, is reversed.

(c) No costs are allowed either party to this appeal. Rule on Appeal 55 (1), 34A Wn. (2d) 58, as amended, effective March 1, 1954.

GRADY, C. J., SCHWELLENBACH, HILL, and DONWORTH, JJ., concur.