[No. 11714.    Department Two.    June 26, 1914.]

GEO. S. BROOKE, *Respondent*, v. JOS. H. BOYD, *Appellant*.[1]

PLEADING—SPECIAL INTERROGATORIES. It is proper to refuse to require an adverse party to answer special interrogatories, under Rem. & Bal. Code, § 1226, permitting the same when material to the defense of the action, where they were immaterial in that answers would in nowise tend to support any material allegation of the answer, or where the matters inquired about were as much within the knowledge of the defendant as of the adverse party.

APPEAL—REVIEW—HARMLESS ERROR. Refusal to require answers to special interrogatories is harmless, where full and substantially accurate findings were made below, and the case is before the supreme court upon the findings made.

CONTRIBUTION—ACTIONS—DEFENSES—CONSENT TO RELEASE. It is no defense to an action for contribution for a note paid, that the other makers paid the note only after executing several renewal notes, which defendant refused to sign, where they did not consent to release the defendant, and the action was commenced after the last renewal was paid.

CORPORATIONS—STOCKHOLDERS—LIABILITY TO CONTRIBUTION. Where five stockholders became surety for their corporation, the right of contribution arises among themselves upon a payment by part of them, each being liable for one-fifth of the amount, and not according to the amount of stock held by each.

Appeal from a judgment of the superior court for Spokane county, Huneke, J., entered July 11, 1913, upon findings in favor of the plaintiff, in an action for contribution, tried to the court. Affirmed.

*R. L. Edmiston*, for appellant.

*Cannon, Ferris & Swan* and *John M. Cannon*, for respondent.

FULLERTON, J.—This is an action for contribution. On December 14, 1906, the appellant Boyd, the respondent Brooke, the defendant Edward H. Dahm, and one Jensen and one White, constituted the board of trustees of the Verde

[1] Reported in 141 Pac. 357.

Antique Marble Company, a corporation engaged in develop-
ing certain marble quarries situated in Stevens county.   The
corporation was then financially embarrassed, and to relieve
its immediate necessities, the trustees named borrowed $5,-
500 from the First National Bank of Coeur d'Alene, Idaho,
executing and delivering to the bank their promissory note
for that sum.   This money was paid into the treasury of the
corporation, and was used by it in part for development
work, and in part in the payment of the corporation's obli-
gations.   At the time of 'the execution of the note to the
Coeur d'Alene Bank, the corporation issued its note for a
like amount to Jensen, as trustee for the five joint makers
of the note, and assigned to Jensen, as security therefor,
certain of its bonds.   Subsequently the corporation became
wholly insolvent, as the court found, without fault of Jensen
or fault of its trustees, and failed to pay the note; the bonds,
by reason of such insolvency, becoming worthless.   On the
maturity of the note given the Coeur d'Alene bank, the ap-
pellant refused to pay any part thereof, and refused to join
with his co-makers in a renewal thereof, or to recognize the
note as a binding obligation upon him in any manner what-
ever.   Thereupon the remaining trustees, on the demand of
the bank, renewed the note for a limited period, and there-
after renewed it for a second time, and finally Brooke, White
and Jensen paid the same.   Thereafter White and Jensen
sold and assigned their claim for contribution to the respond-
ent Brooke, and this action was thereupon instituted to re-
cover against Boyd his proportionate share of the note.

The appellant defended the action on the ground of fraud,
averring that he had been induced to join in the execution
of the note through the false and fraudulent representations
of his co-trustees and co-makers of the note.   A reply was filed
putting in issue the allegations of the answer, and the case
was tried by the court sitting without a jury.   The court
made a specific finding to the effect that no fraud had been
practiced upon the appellant, and held him liable to the re-

spondent for one-fifth of the original amount of the note, together with interest thereon at the rate prescribed in the note, and entered judgment against him for the total of these sums.

The appellant first complains that the court erred in striking, and refusing to require the respondent to answer, certain interrogatories filed in the clerk's office pursuant to § 1226 of Rem. & Bal. Code (P. C. 81 § 1071), which permits interrogatories to be so filed when material to the defense of an action. The order of the court does not disclose the ground upon which it rested its order, but a perusal of the interrogatories shows that they were properly stricken for the greater part on the ground of immateriality, in that answers thereto would in no-wise tend to support any material allegation of the answer or affirmative defense; and that those which might be said to be material called for matters as much within the knowledge of the appellant as they were of the respondent, and were properly stricken on that ground. It is not the purpose of the statute to enable the one party to a lawsuit to require the other party thereto to supply him with all the facts and documents that may be material to his side of the case, or even to secure admissions against interest. Its purpose is to enable him to discover material facts and documents solely within the knowledge, possession, or control of the other party to which he has not access. Such facts and documents as are accessible to him he must procure from the original sources. Furthermore, the case is before us on the findings of fact made by the trial court, which the appellant says in his brief are full and substantially accurate. This being true, the appellant cannot have been prejudiced by the ruling of the court, since the only object sought by the interrogatories has been accomplished. *Du Clos v. Batcheller*, 17 Wash. 389, 49 Pac. 483.

The appellant next contends that, inasmuch as the respondent and his assignors executed a second and third note to the bank prior to paying the obligation without his join-

ing them, they in effect released him from his obligation. It may be that the bank, by accepting the renewal note without the appellant's signature and surrendering the one upon which the appellant was bound, waived its right thereafter to proceed against the appellant for the indebtedness represented by the note, but it would be a novel doctrine to hold that this act released the appellant from contributing to his co-obligors who finally paid the indebtedness. He could be released from this obligation only by their consent, and the record is clear that they did not so consent, whatever effect may be given to the action of the bank with reference to its rights. If the effect of the execution of the renewal notes was to extinguish the note upon which the appellant was bound, the renewal was a payment of the note as to him by his co-makers, and his liability to contribute arose at once. On the other hand, if such renewal was not a release of his obligation to the bank, he was finally released when the last of the renewal notes was actually paid, and his obligation to contribute to his co-makers arose at that time. Since the action against him for contribution was begun after the final payment of the renewal notes, it is not material to inquire which of the foregoing views is correct in order to determine his liability, however pertinent the inquiry might be to determine the amount thereof. But as to this last question, there is no dispute. The appellant is liable for a contribution of a full one-fifth share of the original note, and it is not claimed that he has been held in a sum exceeding that share.

The appellant next contends that the court erred in holding him liable to contribute an equal share of the indebtedness, but should have held him for such proportional share thereof as the number of shares he owned in the corporation bore to the number of shares held therein by his co-obligors. But the rule is otherwise. As stated by Mr. Thompson in his work on Corporations, vol. 5 (2d ed.), § 5233:

"Where stockholders become surety for a corporation, the right of contribution arises as among themselves, where

the circumstances are such as would give this right among sureties in an ordinary case. Thus, where five stockholders executed a note to a corporate creditor for money loaned to the corporation, they thereby became co-sureties for it and each was liable to pay one-fifth of the whole and no more. And each was subject to the liability to make equal contribution to the one which paid the whole note at maturity without regard to the relative amount of stock owned by each."

Finally, it is argued that the record shows fraud practiced upon the appellant by which he was induced to sign the original note. This contention is founded upon certain supplemental, or additional findings, made at the request of the appellant, which show more in detail than do the original findings the relation of the makers of the note to the corporation for whose benefit the note was executed. But we cannot so read the findings. They show, undoubtedly, that the respondent and his assignors had a greater interest in the corporation than the appellant had, and were more familiar with its financial condition, but they clearly negative the idea that any fraud or deceit was practiced upon the appellant.

The judgment is affirmed.

MOUNT, PARKER, and MORRIS, JJ., concur.