[No. 18961. Department One. May 23, 1925.]

JASPER N. WILL *et al., Respondents,* v. SIMON P. DOMER *et al., Appellants.*[1]

PARTNERSHIP (14) — EXISTENCE OF RELATION — EVIDENCE — SUFFICIENCY. A farming partnership between tenants in common of a fruit farm arises from the conduct of the parties, where such intention appears from their residence upon and operation of the land.

DISCOVERY (8)—INTERROGATORIES — OBJECTIONS AND EXCEPTIONS. Interrogatives propounded to the adverse party are properly stricken, where they related mostly to matters of which the moving party had full knowledge, a referee was appointed to take the testimony, and full opportunity given to present the case.

PARTNERSHIP (25)—COMPENSATION FOR SERVICES—CONTRACT—EVIDENCE—SUFFICIENCY. An agreement for the compensation of a partner in the operation of a fruit farm will be inferred where, after expiration of a fixed period during which specific compensation was agreed upon, the partner returned and performed services under circumstances indicating that he was to have reasonable compensation.

Appeal from a judgment of the superior court for Stevens county, Hill, J., entered October 29, 1923, in favor of the plaintiffs, in an action to dissolve a partnership and for an accounting, tried to the court. Reversed.

*S. P. Domer,* for appellants.

*L. B. Donley,* for respondents.

BRIDGES, J.—Suit for dissolution of partnership and for an accounting.

In September, 1908, the plaintiffs and the defend-

[1]Reported in 236 Pac. 104.

ants Domer and wife and Smith and wife were equal owners of a certain tract of land located in Stevens county, this state. On that day they entered into a written agreement which provided that Mr. Smith should take charge of the land and devote his time to its improvement until January 1, 1910, and should receive a salary of sixty dollars a month. The contract contemplated that various improvements would be made on the land, such as putting a part of it in orchard and dividing and selling it, and operating a part of it as a farm. It also provided that all expenses incurred in improving the land should be charged thereto, and all moneys derived from sales of products should be first applied towards the payment of the expenses of improving it, and that if any money should be advanced by any of the parties it should draw interest at the rate of eight per cent per annum. The contract also contemplated that the plaintiffs and the defendants Domer and wife would probably have to provide certain sums of money for the carrying on of the enterprise.

Under this contract, the defendants Smith and wife resided on the land for a short time, and then the plaintiff and his wife joined them there. Very shortly thereafter Smith went away and left the plaintiffs in charge, and thereafter Smith and wife had very little to do with the proposition. The plaintiffs continued to reside on the land and do a certain amount of work until September, 1910, when on account of the ill-health of Mr. Will, with the knowledge and consent of the other defendants, they left and went to Colorado, and did not return to the state of Washington until May, 1917. During the absence of the plaintiffs, the defendant Domer had considerable to do with looking after the property.

19—134 WASH.

When the plaintiffs returned to the state early in 1917, with the knowledge and approval of the defendant Domer, they returned to the farm and continued to reside there until the time of the trial. Apparently, they found the land and orchards in bad condition, but by doing much work and taking good care of the place it had become, at the time of the trial, what some of the witnesses called a "commercial orchard." During all the years between, Domer and Will had advanced certain sums of money towards the welfare of the place. Not long after Smith left the place, he deeded a part of his interest to the defendant Domer, so that at the time of the trial, and for a long period prior thereto, he owned a one-half interest in the property, and plaintiffs had a one-third interest, and Smith and wife owned a one-sixth interest.

The trial court found that a copartnership for the operation of the farm or orchard existed between the plaintiffs and the defendants Domer and Smith; that Domer had done certain work on the place and was entitled to certain pay therefor, and that in addition thereto he had advanced to the copartnership certain sums of money for which he should receive credit; that the plaintiffs had given their time to the operation of the place from 1908 to 1910, and from 1917 to the time of the trial, and that they also had advanced certain sums of money for the benefit of the partnership; that the plaintiffs and the defendant Domer had received various sums of money from the sale of products from the farm. After balancing accounts and allowing Domer and Will certain pay for services, the court found that the plaintiffs were entitled to judgment against Domer and wife in the sum of $6,150.75, together with interest, and that he was entitled to judgment against the defendants Smith and wife in the sum of $3,064.14. Judg-

ment was entered accordingly. Only Domer and wife have appealed.

They first contend that the testimony fails to show the existence of a partnership for farming and fruit purposes. On this question suffice it to say that a reading of the testimony and the contract heretofore mentioned convinces us that a partnership existed, Domer and wife having an undivided one-half interest therein, the plaintiffs having an undivided one-third interest, and Smith and wife an undivided one-sixth interest. It is true that there is no express provision either in the contract or in the oral testimony to the effect that it was the intention of the parties to form a partnership. But a partnership may arise out of the conduct of the parties, provided it can be determined therefrom that such was the intention, and that it was the intention in this instance that there should be a partnership in the operation of this land, we have no doubt.

Without reciting in detail the allegations of the complaint, suffice it to say that we are of the opinion that it states a cause of action, and the appellants' demurrer thereto was properly overruled.

Before the trial of the case the appellants submitted to the respondents more than forty interrogatories to be answered under oath. Upon plaintiffs' motion these were stricken. We think the court did not commit any error in so doing. For the most part the interrogatories concerned matters of which the appellants either had full knowledge or as much as the respondents. In any event, the court appointed a referee who was given authority to take the testimony and report his findings. The record shows that the appellants were given ample time in which to present their case and that they were not prejudiced in any way by striking their interrogatories. Matters of this kind rest very largely in the

discretion of the trial court and we will not overrule that discretion unless we can say that there has been an abuse of it.

A more serious question arises concerning the compensation which the trial court allowed the plaintiffs for their services. It will be remembered that the contract provided that Smith and wife should move on the land and look after it, and that the testimony shows that they soon left the place and put the respondents in possession, where they remained until 1910, when they went away and returned in May of 1917. The court found that the respondents had worked on the place twenty-two months and seven days before they left in 1910, and awarded them compensation for that time at the rate of $60 a month, or a total of $1,334, and awarded them compensation at the rate of $150 per month from 1917 until the time of the trial, making a total of $10,860 allowed for that period.

Appellants contend that the court erred in allowing respondents any compensation. They support their contention by invoking the general rule of law that one partner cannot claim compensation from the partnership for its members for services, in the absence of a specific agreement to that effect. But the rule of the modern cases is not so restricted. An agreement for compensation may be inferred from the conduct of the parties. In the case of *Duley v. Duley,* 129 Wash. 663, 225 Pac. 401, in commenting on the general rule with reference to a partner receiving compensation, we said:

"The question of whether or not in a particular case the court shall conclude that an agreement for compensation to a partner for services rendered to the partnership has been made, is largely a question to be answered from the facts and circumstances of the particular case; and this, it seems to us, must be particularly true when the partnership exists between persons so closely connected by ties of blood as were

these partners, a fact which we all know is generally conducive to loose and indefinite dealings between such partners relative to partnership business.''

We then quoted with approval from 1 Rowley on the Modern Law of Partnership, § 354, as follows:

''Where it can be fairly and justly implied from the course of dealing between the partners, or from circumstances of equivalent force, that one partner is to be compensated for his services, his claim will be sustained. 'The partnership may be of such a peculiar kind, and the arrangements and the course of dealing of the partners in regard to it may be such as pretty plainly to show an expectation and understanding, without an express agreement upon the subject, that certain services of a co-partner should be paid for.' ''

As to the compensation of $60 a month from 1908 to 1910, allowed by the court, we think it entirely justifiable. The contract expressly provided that Smith should have that compensation, and it seems to have been the understanding between all the parties that if Smith left the place, respondent might take his position and receive his compensation. This may stand as an agreed fixed sum for compensation for that period.

But this compensation of $60 per month cannot be extended to respondent's services for 1917 and forward, because of the long intermediate period that he was not on the land, and also because, by the express terms of the contract, that compensation was to be made ''only until January 1, 1910.'' While we do not find in the testimony any express agreement that during the later period any compensation was to be paid respondent, yet, when all the circumstances are taken into consideration, we think it may be clearly and justly inferred from the evidence that there was an understanding between the parties that respondent should be paid a reasonable compensation for his services as performed from 1917 to the time of the trial.

But we are confident that the testimony does not support the allowance of $150 a month. Nearly all the testimony on that question is to the effect that $100 a month would be a reasonable compensation. In this connection it must be remembered that during all this period the respondents obtained their living, for the most part, from the land. We conclude on this point that the respondent's compensation from the time he returned to the farm in 1917 until the time of the trial should have been at the rate of $100 instead of $150 per month. In all other respects we think the accounting made by the court is sustained by the testimony.

The judgment is reversed, and the cause remanded for proceedings in accordance herewith.

TOLMAN, C. J., MAIN, PARKER, and ASKREN, JJ., concur.