[No. 21459. Department One. January 11, 1929.]

NELLIE G. MOBERG, *Appellant,* v. GEORGE W. McCAULEY, *Respondent.*[1]

[1]Reported in 273 Pac. 739.

*Walter B. Allen,* for appellant.
*James R. Chambers,* for respondent.

HOLCOMB, J.—The complaint of appellant alleges that on May 23, 1923, William L. Green was the owner of two certain lots described therein in Seattle; that the properties had certain encumbrances against them; that at all the times mentioned in the complaint Mc-Cauley was engaged in the real estate business in Seattle, and was president of the McCauley Realty and Investment Company, a Washington corporation; that McCauley was a particular friend of Green's and Green was then in poor health and failing rapidly, mentally and physically; that on that date McCauley and Green entered into a special partnership arrangement and oral agreement that McCauley was to provide the necessary funds to protect the real estate described from loss; that McCauley was to manage, control and dispose of the same as in his judgment seemed best; that the title to the properties should be transferred to and held by McCauley's corporation; that they and Green should share equally in the ultimate profits or losses; that in accordance with such partnership agreement Green transferred the record title to each of the properties described to the McCauley Realty and Investment Company.

It was then alleged that afterwards, on December 1, 1923, Green was adjudged insane and confined in an insane hospital, where he died on March 11, 1924. It was further alleged that thereafter the will of Green was duly admitted to probate, and in due course, a final distribution of all the remainder of his estate, both real and personal, was made by the court, and appel-

lant, who was made the residuary legatee of Green's estate by his will, received the same.

It was alleged that none of the properties mentioned in the complaint, nor any interest therein, nor any partnership interest with respondent, was brought into the probate matters nor in any way adjudicated therein; that during all the times therein mentioned appellant was bedridden, unable physically to attend to any business and did not know that the special partnership matters alleged were not brought into the estate of Green, until a few months prior to the commencement of her action, and long after the estate had been settled.

It was alleged that on September 24, 1923, McCauley sold one of the properties described for a consideration of $8,000, against which were taxes due Seattle in the sum of $122.13, which were the only payments made thereon by respondent, leaving a net profit of $7,877.87. It was alleged that on January 3, 1925, McCauley sold the other property described in the complaint for $6,500, from which purchase price was deducted county taxes thereon of $2,729, interest and city taxes amounting to $1,257.59, leaving a net profit of $2,513.41.

It was alleged that the last mentioned real estate, at the time of the death of Green, had a mortgage thereon, and the estate on May 19, 1924, paid on the mortgage, out of its funds, $3,356.19, and McCauley paid thereon $250; that there remained a net profit of $6,785.09 on both properties to be divided equally between McCauley and appellant as the successor in interest of Green.

It was then alleged that payment had been demanded from respondent, who failed and neglected to pay the same or any portion thereof. Judgment was demanded in the sum of $6,748.73, with interest.

The answer of respondent admitted that Green owned the properties in 1923, admitted Green's insanity, death and probate of his estate; admitted friendly relationship between them; and denied each and every other allegation in the complaint.

Appellant served five interrogatories upon respondent, calling attention to record transfers, and asking what, if any, consideration passed to Green for the properties, and asking him to state fully the details of the transaction and what considerations the purchasers paid and what, if anything, was against the property at the time of sale. On motion these interrogatories were stricken by the court.

Appellant demanded a jury trial, and paid the jury fee. On motion, the demand for jury was stricken, and an order entered that the case be tried as an equity case.

Appellant's first contention is that the court erred in striking the interrogatories. It is insisted that Rem. Comp. Stat., § 1225, providing for the examination of any party to an action as a witness, and that he may be compelled to testify as any other witness, and Rem. Comp. Stat., § 1226, providing that, instead of the examination being had at the trial, either party, after filing his pleadings, may serve interrogatories for the discovery of facts and documents material to the support or defense of his action, compulsorily required the interrogatories to be answered.

The interrogatories chiefly asked about the taxes, assessments and mortgages on the two properties, and the amounts of money paid to appellant's testator for the deeds which she alleges in her own complaint.

As to the taxes, assessments and mortgages, they were matters of public record.

As to the consideration paid for each lot, appellant herself alleged the consideration.

Respondent was a witness at the trial and was fully examined as to all the details of their transactions. The only object of the interrogatories has been accomplished.

We can, therefore, find no abuse of discretion or prejudicial error in striking the interrogatories. *Du Clos v. Batcheller,* 17 Wash. 389, 49 Pac. 483; *Brooke v. Boyd,* 80 Wash. 213, 141 Pac. 357, Ann. Cas. 1916B 358; *Will v. Domer,* 134 Wash. 576, 236 Pac. 104.

█ Appellant also assigns error in denying her a jury trial. It is contended that the action was one for the recovery of money only, upon which, under Rem. Comp. Stat., § 314, a jury, when demanded, is mandatory. It is argued that equity has no jurisdiction for the mere recovery of money.

While the complaint does demand merely a money judgment, it is also alleged that there was a special partnership, existing between McCauley and appellant's testator, in which there had never been an accounting according to the terms of the special partnership.

It is true that the relationship between Green and McCauley was terminated by the death of Green, and that appellant herself had never been a special partner of McCauley; but the allegations of the complaint showed that there had never been any settlement of the partnership affair which was alleged. The allegations also set up matter to justify her action as the successor in interest of Green. It is apparent, therefore, that the action was essentially one for an accounting of the partnership transaction.

In case of dissolution by the death of a partner, the power to administer the firm affairs belongs to the survivor. 30 Cyc. 660.

Before the rights of the several partners in the property of the firm can be ascertained, and such prop-

erty distributed among them, a settlement of partner-ship affairs must generally be had. 30 Cyc. 681.

The personal representatives of a deceased partner are entitled to an accounting from the surviving part-ners. 30 Cyc. 683.

Although the personal representative of Green, after his death, had no accounting with the alleged surviving partner, appellant alleged her right to re-cover as Green's successor in interest, and that re-spondent had never accounted, nor been held to an ac-counting by Green, or his personal representative, and her excusable inactivity.

The surviving partner is bound to account to the representatives of the deceased partner. 30 Cyc. 684.

In the absence of statutory provisions on the sub-ject, a court of equity has exclusive jurisdiction of actions for the dissolution and settlement of partner-ships. 30 Cyc. 716.

Had there been a basis for settlement agreed upon, or a final balance stated between the alleged partners, no doubt an action of assumpsit would lie to recover the balance. 30 Cyc. 716.

In the absence of such mutual settlement and ac-counting and ascertaining the debts and liabilities in-involved in the subject matter of the partnership and providing for their adjustment, an accounting between the partners determining the exact balance between them is the only method of litigating the matter. *Stevens v. Baker,* 1 Wash. Terr. 315; *Hamer v. Peter-son,* 9 Wash. 152, 37 Pac. 309; *Kwapil v. Bell Tower Co.,* 55 Wash. 583, 104 Pac. 824; *Miller v. Kemper,* 107 Wash. 274, 181 Pac. 859.

Since appellant based her action on the profits al-leged to be due under a special partnership agreement with Green, that she was the successor in interest of Green and that the partnership matter had not been

adjudicated in the probate of Green's estate, the action is essentially one for an accounting and to recover whatever should be found to be the balance due from respondent, and is therefore one of equity. A jury was therefore properly denied.

■ Appellant assails two findings made by the trial court and its conclusion of law, based thereon, in favor of respondent, and in refusing to find that a special partnership existed between Green and respondent concerning the property.

The evidence as to the special partnership was conflicting. There was but slight evidence on behalf of appellant by way of an alleged admission of respondent that a special partnership between Green and McCauley had existed. This was positively refuted by McCauley, and the trial court found in his favor. After a careful examination of the evidence, we are unable to say that the evidence preponderates against the finding of the trial court. Under our oft repeated rule the findings and refusal to find in favor of appellant cannot be disturbed.

■ Appellant also contends, widely departing from the theory of her complaint, that she is entitled to judgment against respondent for the amount paid by the estate of Green on the mortgage against one of the lots which Green himself had given.

The balance paid by Green's estate upon this mortgage was $3,356.19. At the sale under foreclosure, the mortgagee bid in the property for $250, which amount respondent paid and redeemed. It is contended that the effect of the redemption by respondent was to make respondent liable for the amount against the lot paid by Green's estate.

The evidence of respondent was very positive that he paid $1,100 to Green for his equity in the two lots. One of the lots was then subject to the mortgage pre-

viously given by Green. Respondent took the lot subject to Green's mortgage, but respondent did not agree to pay the indebtedness. He merely took the real estate, subject to the mortgage, and of course, when it was later sold for enough to more than satisfy the mortgage debt, the mortgage debt was paid and the title cleared of the encumbrance.

The facts distinguish the situation in this case from the cases cited by appellant, to the effect that, where a person has paid money for which others were responsible, the equitable claim which such payment gives him on those who were so responsible, shall be clothed with the legal garb with which the contract he has discharged was invested. *Pease v. Syler,* 78 Wash. 24, 138 Pac. 310, is a fair type of the citations.

In this case, under the evidence and the findings, respondent was in no wise liable or responsible for the amount of the mortgage as a debt. Green and his estate were. Green's mortgagee had an undoubted legal right to enforce payment of the mortgage debt against Green's estate. The mortgagee would have no right to enforce payment of the debt itself against respondent; hence, there could not possibly be any right of subrogation.

We find no error and the judgment is affirmed.

FULLERTON, C. J., MITCHELL, TOLMAN, and BEALS, JJ., concur.