Mutual Benefit Health & Accident Association v.
Alice M. Bunting.

183 So. 321.
Opinion Filed July 28, 1938.
Rehearing Denied September 30, 1938.

648

650

*Knight, Adair, Cooper & Osborne,* for Petitioner;

*Evan Evans,* for Respondent.

PER CURIAM.—A writ of certiorari was issued by this Court to review a judgment of the Circuit Court affirming a judgment of the Civil Court of Record of Duval County. The judgment was for the plaintiff on an accident disability insurance policy. Questions presented on this writ of certiorari relate largely to the admissibility of evidence and the probative force of evidence.

Under the Constitution of Florida "the judicial power of the State shall be vested in" specifically designated courts and judges, "and such other courts or commissions as the Legislature may from time to time ordain and establish." Sec. 1, Art. V, as amended in 1914. See also Sec. 35, Art. V, as amended in 1910, and added Secs. 39, 40, 41, 42, 43 of Art. V.

The jurisdiction of the Supreme Court is appellate only "in all cases at law and in equity originating in the Circuit Courts, and of appeals from the Circuit Courts in cases arising before Judges of the County Courts in matters pertaining to their probate jurisdiction and in the management of the estates of infants, and of cases of conviction of felony in the criminal courts, and in all cases originating in the Circuit Courts." In addition to its appellate jurisdiction, the Supreme Court "shall have the power to issue writs of mandamus, certiorari, prohibition, quo warranto, habeas corpus, and *also* all writs necessary or proper to the complete exercise of its jurisdiction." Sec. 5, Art. V. The power to issue writs of certiorari, and, in appropriate cases, writs of prohibition or mandamus, enables the Supreme Court to exercise supervisory jurisdiction over other courts, in conformity with the command of Section 4 of the organic Declaration of Rights that "all courts in this State shall be open, so that every person for any injury done him

in his lands, goods, person or reputation shall have remedy, by due course of law; and right and justice shall be administered without sale, denial or delay."

Under Section 1, Article V, of the Constitution as amended in 1914, Civil Courts of Record have been established by Chapter 6904, Acts of 1915, superseded by Chapter 8521, Acts of 1921, Secs. 5155, *et seq.*, Perm. Supp. C. G. L.; and such courts have also been established by Chapter 11357, Acts of 1925, Extra Session, Sections 5156, *et seq,* C. G. L.

Section 2, Article V, Constitution, gives to the Circuit Courts defined original and appellate jurisdiction including final appellate jurisdiction in all civil and criminal cases arising in the County Court or before the County Judge; and also gives to the Circuit Courts jurisdiction "of such other matters as the Legislature may provide."

Pursuant to such organic grant of miscellaneous jurisdiction to the Circuit Court, Sections 11 and 12 of Chapter 8521, Acts of 1921, and Sections 11 and 12 of Chapter 11357, Acts of 1925, Extra Session, Sections 5166 and 5167, C. G. L., give to the Circuit Courts appellate jurisdiction in all cases decided by the civil courts of record in the same manner and with the same limitations as in writs of error from the Circuit Courts to the county court; and such statutes also provide for writs of certiorari from the Supreme Court to judgments of the Circuit Courts in cases appealed from the civil courts of record to the Circuit Courts. See State, *ex rel.*, v. The A. C. & S. Co., 84 Fla. 123, 92 So. 871; State v. Atkinson, 102 Fla. 1028, 137 So. 266; State, *ex rel.*, v. Barrs, Judge, 105 Fla. 27, 140 So. 908; State, *ex rel.*, v. Circuit Court, 110 Fla. 46, 148 So. 522; State, *ex rel.*, v. Gray, Circuit Judge, 116 Fla. 510, 156 So. 493; State, *ex rel.*, v. Dickinson, Clerk, 103 Fla. 907, 138 So. 376; Am. Ry. Co. v. Weatherford, 84 Fla. 264,

93 So. 740; 86 Fla. 626, 98 So. 820; State, *ex rel.,* v. Barrs, Judge, 87 Fla. 168, 99 So. 668; Barrs, Judge, v. J. R. M. Co., 91 Fla. 30, 107 So. 249.

The Constitution does not authorize two successive appeals from a judgment or decree to successively higher courts, except appeals to the Supreme Court "from the Circuit Courts in cases arising before Judges of the County Court in matters pertaining to their probate jurisdiction and in the management of the estates of infants."

While a writ of certiorari lies from the Supreme Court to judgments of the Circuit Courts rendered in causes appealed to the Circuit Courts from civil courts of record, such writs of certiorari issued from the Supreme Court do not authorize a review of the Circuit Court judgments as on writ of error. Such a procedure would conflict with the purpose of the Constitution to give to the Circuit Courts "final appellate jurisdiction" in all cases arising in courts that are inferior to the Circuit Courts, with exceptions not material here. See Edwards v. Knight, 100 Fla. 1704, 132 So. 459.

Under the provisions of Sections 5166, 5167, C. G. L., and Sections 5155 (11), 5155 (12), Permanent Supplement (1936) C. G. L., the Supreme Court, on writs of certiorari to judgments of the Circuit Courts, rendered in causes appealed to the Circuit Courts from the civil courts of record, should review and adjudicate such matters as may properly be determined on writs of certiorari as their appropriate scope and use under the law, have been or may be developed by the decisions of the Supreme Court. The purpose in issuing such writ of certiorari is to determine in each case whether the judgment sought to be reviewed is illegal or is essentially irregular or prejudicial and materially harmful to the party duly complaining; to the end that the commands, prohibitions and limitations of con-

trolling law may prevail in the administration of the law. Am. Ry. Ex. Co. v. Weatherford, 84 Fla. 264, 93 So. 740; 86 Fla. 626, 98 So. 820; A. C. L. R. R. Co. v. Fla. Fine Fruit Co., 93 Fla. 161, 112 So. 66; Hamway v. S. A. L. Ry. Co., 101 Fla. 1483, 136 So. 628.

"On writs of certiorari the ultimate adjudication is to quash the judgment complained of or to quash the writ of certiorari." First Nat'l Bank v. Gibbs, 78 Fla. 118, 82 So. 618.

"In proceedings in certiorari addressed to the Circuit Court as an appellate court in a cause arising in the Civil Court of Record questions relating to the merits of the cause and in no wise affecting the jurisdiction of the lower courts of the external proceedings in the cause will not be reviewed, there being substantial supporting evidence." Hamway v. S. A. L. Ry. Co., 101 Fla. 1483, 136 So. 628.

The declaration in the Civil Court of Record contains allegations "that the policy insured plaintiff against disability resulting from bodily injuries sustained by the insured through accidental means as a result of operating, driving, demonstrating, adjusting, riding in or on an automobile, or as a result of being run down, struck or run over by an automobile, * * *

"That during the life of said policy * * * in the City of Jacksonville, Duval County, Florida, the plaintiff was engaged in entering a certain taxicab and that while plaintiff was so entering * * * the said taxicab was started forward and in motion, and that thereby plaintiff was thrown against the doorway of said cab and her head was caused to strike a portion of said taxicab, to-wit, the top above the door thereto, and the plaintiff was thereby injured under such circumstances as to come within the promise and undertaking of said policy. That as the result of said 'injury' and directly and independently of all other causes, plaintiff

was wholly and continuously disabled from the date of said accident until the date hereof; that in and by said accident the plaintiff sustained an injury to her head and to her brain and nervous system, which injury resulted from said accident and directly and independently of all other causes; that on account of said injury plaintiff entered a hospital and was necessarily and continuously confined therein solely on account of said injury for a period of five days, that plaintiff has been continuously under the professional care and regular attendance, at least once a week, beginning with the first treatment, of a licensed physician and surgeon other than herself since the date of said accident; * * *."

There were numerous pleas raising issues of fact on the allegations of the declaration.

On the question of total disability of the plaintiff as a result of the injury alleged to have been sustained, Dr. J. G. Lyerly, a witness for the plaintiff, who qualified as a specialist in surgery of the brain and nervous system, was interrogated as follows:

"By Mr. Evans: 'Doctor, what is your opinion as to the patient—the condition you saw in Mrs. Bunting as to disabling her from any useful employment?'

"Mr. Markham: 'Defendant objects to that because it called for the conclusion of the witness, and on the further ground it invades the province of the jury.'

"The Court: 'I think that is proper. Comes within the scope of medical testimony. I overrule the objection. Of course, symptoms are a matter of medical opinion. Note an exception for the defendant.'

"A. 'I thought she was totally disabled.'

"Q. 'Totally disabled from performing any useful employment?'

"A. 'Yes, sir.' "

The essence of the testimony was: "I thought she was totally disabled." This expression of the opinion of the specialist was not "inadmissible as invading the province of the court or jury in dealing with matters of common knowledge" as contended, so as to render the verdict illegal or without sufficient evidentiary support.

Under some circumstances the testimony might be technical error to be remedied on appeal if harmful. But the judgment will not be quashed on certiorari because of the admission of such testimony where as here there is sufficient substantial evidence to sustain the verdict on that point; and there is no substantial showing that the plaintiff was not wholly and continuously disabled by the injury to her head as alleged.

Plaintiff gave testimony to the effect that the insurance company offered to pay her full amount of her policy if she would take $1,000.00 less on her husband's policy. The testimony was objected to by opposing counsel, but the court denied the motion to strike. Further testimony on the same line was elicited and objection was made thereto. The court granted the motion to strike the testimony because it was an offer of a compromise that was not accepted. The first time counsel objected to this testimony he did not state as one of the grounds of objection that it was an offer to prove a compromise that was never accepted, and so the court refused to strike the testimony. The second time counsel for defendant objected to this testimony was on the ground that it was shown that plaintiff did not accept any of the proposed propositions. The court then ordered the testimony stricken and instructed the jury not to consider the last two or three questions and answers with reference to the offer on the part of Mr. Fleeman.

"When an offer to compromise a claim is made, and the admission of the truth of the facts on which the claim is

based is hypothetical only, such admission cannot be treated as an assertion representing a party's actual belief, and cannot, therefore, be received in evidence; but, if the admission is unconditional, and made without any regard in the circumstances which accompany it, it should be received in evidence. The rule excluding an offer of compromise is based upon the proposition that such an offer does not ordinarily proceed from and imply a belief that the adversary's claim is well founded, but rather that the further prosecution of the claim, whether well-founded or not, would in any event cause such annoyance as is preferably avoided by the payment of the sum offered, and the offer therefore does not signify an admission of the alleged facts on which the claim is based." Jones v. Jernigan, 29 N. M. 399, 223 Pac. 100. See also 3 Jones Commentaries on Evidence (2d Ed.) 1939, Sec. 1052; 2 Wigmore on Evidence, 1229, *et seq.,* Secs. 1061, 1062.

Under the rule stated above, and which is the rule of general application as the test for determining when a proposed compromise is admissible, this offer to compromise was so predicated on the contingency that plaintiff take $1,000.00 less on another policy that it was not an admission of liability, but an offer to compromise, which was not accepted, and was therefore not admissible in evidence.

It is contended that even though the judge instructed the jury to disregard this testimony, yet it was of such character that its effect could not thus be erased from the minds of the jurors.

In the case of Spaulding v. Laybourn, 164 Ia. 277, 145 N. W. 521, relied upon by plaintiff in error, the Supreme Court of Iowa held that it was reversible error for the court to say that it did not think anybody would be hurt, by a remark of counsel for plaintiff, made after several unsuccessful attempts to get evidence of a proposed compromise

before the jury, that that was just what he was after. There is no similar element in this case. As soon as the court ruled that the evidence was not admissible and ordered the testimony stricken, there was no remark made that was prejudicial to the interest of the defendant. The court's instruction to the jury that they should not consider such testimony was sufficient under the circumstances to remove it from the consideration of the jury. This is especially true since this case is here on certiorari and not writ of error.

It is contended that the court erred in refusing to charge the jury that they should in no event allow plaintiff any indemnity for loss of time subsequent to May 30, 1935; and erred in charging the jury that the part of the policy providing that the policy does not cover loss sustained while the insured is not continuously under the professional care and regular attendance, at least once a week, beginning with the first treatment of a licensed physician or surgeon, is binding, but is not to be construed with literal strictness, but must be construed substantially; that failure of plaintiff to have attendance of a doctor for eight or nine days would not forfeit her rights under the policy; that a variance of one or two days would not invalidate her claim; that she must substantially comply with this provision or she has no claim under the policy.

"* * * Such a provision merely requires a substantial compliance, a slight variation of a day, or even a few days from week to week, not being sufficient to effect a material non-compliance. So a provision in a health policy for disability indemnity where insured is 'necessarily and continuously confined within the house, and there regularly visited at least once a week' by a physician, merely requires that the physician be weekly in attendance, and a compliance is shown where, although during a sickness of twenty-

nine days' duration, the physician only called at the house twice, he kept in touch with the insured during the full period by means of such calls, telephone conversations, and personal calls upon the physician by relatives and friends and prescribed for him during the whole period. * * * And a provision for indemnity while the insured is under the regular treatment of a legally qualified physician at least once in each seven days is satisfied by proof that he has continuously been under the charge, direction, and treatment of such a physician, that pus was flowing, and that he, the insured bandaged himself every morning." 7 Couch Cyclopedia of Insurance Law 5797, Sec. 1679.

It is undisputed that from the date of the injury on May 7, 1935, to May 23, 1935, a licensed physician attended plaintiff at least every seven days, but it is contended that because the affidavit of Dr. Vickerstaff showed that he did not attend plaintiff from May 23, 1935, until June 2, 1935, that she could not recover for loss due to said injury beyond May 30, 1935. Under the rule as stated above, it appears that the matter of three days could be ignored, because there was a substantial compliance with the terms of the policy.

Again it is contended that plaintiff was not attended by a physician at least once a week during the six months' period after the date of her injury, especially from June 3, 1935, to the end of the six months' period, so she could claim indemnity for that period of time.

The policy provided that plaintiff might receive benefits for six months after the injury if she was "continuously under the professional care and regular attendance, at least once a week, beginning with the first treatment, of a licensed physician or surgeon, other than the insured."

Plaintiff testified that from the date of her injury on May 7, 1935, to May 11, 1935, she was in the hospital; that

from that date until May 15, 1935, she was at home; that on May 15, 1935, she went to Montgomery, Alabama; that in the early part of June, 1935, she returned to Jacksonville; that while in the hospital she was attended by Dr. Jelks; that after her return home from the hospital she was attended by Dr. Alford; that while in Montgomery she was attended by Dr. Vickerstaff all of the time; that after her return to Jacksonville and up until a month before the trial she was treated by Dr. Neil Alford at least once a week; that because he had to use electrical implements in treating her, she had to go to his office instead of having him come to her house; that in addition to these doctors she has consulted Dr. Lyerly, a brain specialist, and has had treatments from osteopaths. There was testimony to the effect that she is still disabled.

According to the testimony of plaintiff, the requirement of the policy as to the attendance of doctors was fully met. See Hunter v. Federal Cas. Co., 199 App. Div. 223, 191 N. Y. S. 474; 7 Couch Cyclopedia of Insurance 5798, Sec. 1679, n. 6. There was no provision in the policy that the insured had to be treated at home, and so the treatments had in the office of Dr. Alford were within the provisions of the policy requiring the attendance at least once a week of a licensed physician. There was substantial testimony on which the jury could have based its verdict in this particular, and we are not warranted in disturbing that finding, inasmuch as this case is here on certiorari.

It is contended that the court erred in sustaining objections to interrogatories propounded by the defendant seeking to ascertain the date of the first treatment and the name and address of the licensed physician or surgeon who first treated plaintiff, the time she was continuously under the professional care of the first licensed physician or surgeon, and the names and addresses of the other physicians and

surgeons who attended her and the dates when attended by them.

Although the ruling of the lower court on objections raised to interrogatories may be the subject of review on writ of error, State v. Barns, 121 Fla. 341, 163 So. 715, yet the court may, in its sound discretion sustain objections made to proposed interrogatories. It is not a matter of right for a party to insist that his interrogatories be answered; but it is a matter lying within the sound judicial discretion of the court, whether a party's interrogatories will be stricken or sustained. See Wagner v. Haight & Freese Co., 89 N. Y. S. 323; Dillahunty v. Smith, 7 How. (Miss.) 673; Will v. Domer, 134 Wash. 576, 236 Pac. 104; Bartenbach v. Smith, 268 Mich. 653, 256 N. W. 584, 95 A. L. R. 238.

"With the exception of certain later new rulings, hereinafter specially considered, the decisions are almost unanimous in holding that there is no right to an order for the examination of, or to propose interrogatories to, an adversary in reference to matters within the knowledge of the party seeking to inquire."

\* \* \*

"Under Sec. 1226 of the Washington Code (Rem. & Bal.) it was held in Brooke v. Boyd (1914) 80 Wash. 213, 141 P. 357, Ann. Cas. 1916B, 359, that it was not error in the trial court to refuse to require plaintiff to answer certain interrogatories filed in the clerk's office, where the answers to such interrogatories as were not immaterial were as much within the knowledge of the defendant as of the plaintiff; the court saying that it is not the purpose of such statute to enable one party to a lawsuit to require the other to supply him with all the facts and documents that may be material to his side of the case or even to secure admissions against interest, but to enable him to discover material facts

and documents not accessible to him but within the knowledge, possession, or control of the other party."

"In Hubert v. New York, N. H. & H. R. R. R. Co. (1916) 90 Conn. 261, 96 A. 967, an action by a railroad employee to recover damages for personal injuries sustained by reason of a barrel of great weight being placed upon his shoulders without warning, in which action plaintiff in his complaint set out the matters in question with apparent fullness of detail, the defendant answering by denial, it was held there was no error in denying a motion for a disclosure by the defendant of freight receipts, waybills, office records, and other papers and documents showing the size, weight, and contents of the barrel in question, particularly, since, upon the trial, the plaintiff testified as of his own knowledge that the barrel weighed 400 or 500 pounds, and the fact appeared that at the time of the accident one of the barrel heads came out, disclosing iron rollers about 6 inches in length; the further fact appearing that at such time the plaintiff remained fully conscious and in fact continued with his work. The opinion contains no reference to statutory provisions." 95 A. L. R. 241, note.

Some of the information sought to be elicited by these interrogatories was as much within the knowledge of the defendant as of the plaintiff. The detailed information sought as to the exact dates when each of the doctors attended plaintiff was an unfair question. There was perhaps no one who could give the exact dates, covering a period of six months, when each visit, call, consultation and the like of each physician was made, because matters of this kind are not noticed by those who are sick and in need of a physician. The substance of the interrogatory was answered by plaintiff's testimony to the effect that she was attended by a licensed physician for the requisite period of time, at the required intervals, in the manner contemplated

by the provisions of the policy, as they have been interpreted. It is not made to appear wherein the trial court, in sustaining the objections to these interrogatories, abused its judicial discretion. Therefore the action of the trial court in this regard was not fundamentally harmful to the defendant so as to require the judgment to be quashed on certiorari.

It is contended that the court erred in charging the jury that the ninth plea was not sustained, which plea was as follows:

"And for a ninth and further plea to said declaration this defendant says that the policy of insurance sued upon was upon the condition that affirmative proof of loss be furnished to this defendant in case of claim for loss of time from disability within ninety days after the termination of the period for which this defendant is liable, yet notwithstanding this, plaintiff did not and has not furnished to this defendant such affirmative proof of loss."

The policy provided that "affirmative proof of loss must be furnished to the Association at its said office in case of claim for loss of time from disability within ninety days after the termination of the period for which the Association is liable, and in case of claim for any other loss within ninety days after the date of such loss."

The record shows that plaintiff furnished defendant with what was called a "preliminary notice sheet," dated May 13, 1935; an "intermediate report and affidavit of claimant as to accident," dated August 2, 1935, which was notarized and had attached the attending physician's report of the accident dated July 11, 1935, signed by Dr. J. Warner Vickerstaff, which was also notarized; and a "claimant's application for accident benefits," dated June 12, 1935, having attached thereto a statement of the attending physician, dated June 12, 1935, signed by Arthur O. Chappell,

D. O. There was also attached a statement for the employer to make, but the employer, the defendant, did not fill in the blanks.

It appears from the different forms that were filled out and furnished defendant that the Association received such information concerning the accident, and at the proper time, as would warrant it in concluding that affirmative proof of the injury had been made.

The policy of insurance only required one proof of loss to be filed. A proof of loss was filed with the insurance company, and from that and the various papers filed with the company, it can be gathered that plaintiff, at the time of filing each paper, was still incapacitated to perform her usual duties. The insurance company had a right under the contract to examine the insured as often as was reasonably necessary during the pendency of the claim. There was evidence introduced at the trial that plaintiff was, until about a month before the trial began, under the care and attendance of a physician, which showed that her disability continued beyond the six months' period for which defendant was liable. In view of the evidence as to plaintiff's condition during the period of liability, the papers filed with the company showing facts concerning the injury of plaintiff, and the contract right of the company to have plaintiff examined as often as is reasonably necessary to ascertain if she was still disabled, it is shown that the verdict and judgment of the court below were supported by the evidence, and therefore should not be disturbed on the ground that proof of loss was not filed after the period of liability terminated.

"Based largely upon the principle or theory that the law does not require a vain, useless, or unnecessary thing, that is, something that will be unavailing, the general rule is that a denial by the insurer, or its authorized agent, of lia-

bility under its policy, if made during the period for presentation of proofs, will operate as a waiver of a provision which is merely a condition precedent to the bringing of an action, such as one requiring notice and proofs of loss, at least, where the denial is based upon grounds other than the failure to furnish such notice or proofs, also, of any delay as to furnishing, or defects in, such notice or proofs, especially where the denial of liability is followed by a request for further information, and the negotiations extend over the period fixed by the policy, and provided the denial of liability on other grounds was not accompanied by specific objections on the ground of the insufficiency of the proofs furnished." 7 Couch Cyclopedia of Insurance 5545, Sec. 1573.

There was also evidence introduced at the trial that the defendant, through one of its agents, denied liability for the injury, which under the rule stated above, is equivalent to the waiver of any and all proofs of loss. That being true, this plea would not then be a good defense to the cause of action. Therefore the trial court did not commit prejudicial error in stating to the jury that the plea had not been sustained.

It is contended that the court erred in admitting in evidence a letter from E. O'Keefe, Assistant Superintendent of Claims for the insurance company, to plaintiff, which denied that the insurer was liable for the injury that the plaintiff had suffered. It is argued that the purpose of introducing this letter in evidence was to show a waiver of the filing of the proof of loss by the insurer, and that to avail of such waiver, it must be pleaded, which was not done in this case.

There is a waiver of the strict compliance with the requirements as to proofs where the agent receives them, retains them and fails to specify wherein they are deficient,

only telling the insured that they are insufficient. Madsden v. Phoènix Fire Ins. Co., 1 S. C. 24. By retaining proofs without objection, and requesting additional proof, for which blanks are furnished, there is a waiver of any defects in the proofs. Breeden v. Aetna Life Insurance Co., 23 S. D. 417, 122 N. W. 348.

This letter from the agent of the insurance company to plaintiff denying the liability of the defendant for the injury sustained by plaintiff, was introduced in evidence for the primary purpose of showing a denial of liability on the part of the defendant. Evidence was admissible for that purpose because the liability of the defendant for the injury sustained by plaintiff was an issue in the case. Since the letter was admissible for that purpose, and it was in fact admitted in evidence by the court, we cannot on certiorari hold this to be prejudicial error, so as to necessitate quashing the judgment below.

It is contended that the court erred in refusing to grant a new trial when the motion for new trial called the court's attention to the fact that plaintiff was the only witness who testified that the taxi started forward when she was entering it, causing her to injure her head, whereas three eye witnesses who were in the taxi at the time testified that they saw her bump her head of her own accord when entering the taxi without any motion of the taxi, and that plaintiff so stated after the occurrence.

This contention is in effect questioning the sufficiency of the evidence to support the verdict of the jury. The maxim of the law is *"ponderantur testes, non numerantur,"* witnesses are not to be counted but their testimony is to be weighed. It is the general rule, in civil cases, that a claim or defense can be established by a single witness. See 6 Jones on Evidence (2d ed.) 4885. There was evidence of one witness that plaintiff received her injury by reason

of the starting forward of the taxi before she was seated, causing her to injure her head, resulting in all of this trouble. The jury found for the plaintiff and the trial judge refused to grant a new trial. On appeal to the circuit court the judgment was affirmed. On certiorari, we do not weigh the effect of the evidence; but we can reach it when a wrong rule of law is enforced as to its application. American Railway Express Co., v. Fegenbush, 107 Fla. 145, 144 So. 320. The Supreme Court cannot say, on certiorari, after a verdict of the jury has been approved by the trial judge and affirmed by the circuit court, that the circuit court in affirming the judgment arrived at on disputed facts, did not proceed in accordance with the essential requirements of law. Atlantic Coast Line R. Co. v. Farris & Co., 111 Fla. .412, 149 So. 561.

It is contended that the court erred in sustaining a demurrer to the fourth amended plea, which plea was in this language:

"For an amended fourth plea to said declaration, this defendant says that it is untrue that as a result of said injury, and directly and independently of all other causes, plaintiff was wholly and continuously disabled."

Demurrer was filed to this plea on the grounds that it was a negative pregnant, that it failed to allege a complete defense, and that it failed to allege any sufficient matter of defense.

The plea undertakes to deny the allegation of the declaration that "as the result of said injury, and directly and independently of all other causes, plaintiff was wholly and continuously disabled from the date of said accident until the date hereof." But the plea is so worded that it fails to set up a complete defense to the cause alleged in the declaration. Even if the plea could be proved, it would not necessarily be a bar to recovery, because if plaintiff had

suffered a partial disability as a result of the accident she would be entitled to an indemnity under the policy for that type of injury, although this plea, as worded, did not take that fact into consideration. Therefore the trial judge, in sustaining the demurrer to this plea, did not violate any principle of law, such as would warrant us in quashing the judgment on certiorari.

It is contended that the court erred in overruling defendant's objections to the following question propounded to the witness, Dr. Lyerly:

"Now, Doctor, taking into consideration Mrs. Bunting's condition at the time she became your patient, and the fact that she had been in that condition ever since May 7, 1935; that on May 7th, 1935, she was involved in a taxicab accident in that the taxicab which she was engaged in entering was suddenly started forward, causing her to violently strike her head on the steel frame of the doorway; that previous to the happening of that accident, she was in sound health, free from nervous disorders of any character, actively engaged in the business of an insurance saleswoman for approximately three years, during which time she had been actively engaged in that business every day; that after she struck her head on this doorway, she came on into town where she went to the office of an osteopath, where she lay approximately an hour on a table, or thereabouts; that she was then removed to Riverside Hospital where she remained for approximately five days; that immediately she suffered distressing symptoms, such as a rush of blood to her head, falling sensations and dizziness in her head, unsteadiness of the limbs and sensations of falling. What, in your opinion, is the connection between this accident and her condition as you saw it?"

Objection was made to this question on the grounds that there was not sufficient foundation in fact to support the hypothetical question, and that the question did not include the fact that plaintiff's husband had died suddenly on May 13th of that year, which would have had something to do with plaintiff's condition.

In the case of Baker v. State, 30 Fla. 41, 11 So. 492, we said:

"Whereas an expert may not be interrogated upon an hypothesis having no foundation in the evidence, it is yet not necessary that the hypothetical case put to him should be an exact reproduction of the evidence or an accurate presentation of what has been proved. Counsel may present an hypothetical case in accordance with any reasonable theory of the effect of the evidencee. If the jury find that the facts on which his hypothesis or theory of the effect of the evidence, is based, are not proved, the answer of the expert necessarily falls with the hypothesis. (Citing cases and texts.)"

There is some evidence in the record on every material proposition stated in the hypothetical question propounded to the witness, and the question meets the requirement of a reasonable theory of the evidence, that we have heretofore adopted. Although the question would have been more properly framed if it had omitted the word *"fact"* preceding the statement that plaintiff had been in that condition since May 7, 1935, yet there was evidence on that point also. It is not shown wherein the action of the trial court, in permitting this question to be asked, was of such harmful nature that the judgment should be quashed on certiorari, because on the trial the defendant was afforded an opportunity to cross-examine the witness, and at that time could have inquired into the reason why the witness came to the conclusion he arrived at in answering the question.

It is contended that the court erred in refusing to grant the motion for new trial and the motion for directed verdict in defendant's favor, on the ground that there was no evidence to support the allegations of the declaration. We have examined the record and find that there was substantial evidence to support the material allegations of the declaration. The jury so found by its verdict, the trial court so found by its denial of a motion for new trial and entry of final judgment, the circuit court so found by its judgment on appeal of the case there, and we are not warranted in quashing that judgment, on certiorari.

All questions presented having been considered, and no prejudicial error having been made to appear in the judgment of the circuit court, affirming the judgment of the civil court, it is the judgment of this court that the writ of certiorari should be and it is hereby quashed.

It is so ordered.

ELLIS, C. J., and WHITFIELD, BROWN, BUFORD and CHAPMAN, J. J., concur.